UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



FORT LAUDERDALE DIVISION

CASE NO. 02-21769-CIV-MARRA

MAGISTRATE JUDGE SELTZER

NICOR INTERNATIONAL CORPORATION
and CONSULTORES DE LA CUENCA DEL
CARIBE a/k/a CARIB CONSULT,

       Plaintiffs,

v.

EL PASO CORPORATION f/k/a OCEANO
CORPORATION or THE COASTAL
CORPORATION (later THE EL PASO
ENERGY CORPORATION),

       Defendants.

_____/

## COASTAL'S EMERGENCY MOTION AND MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF PERMANENT INJUNCTION

Counter-plaintiff, The Coastal Corporation (hereinafter "Coastal"), files this emergency motion and memorandum in further support if its request that the final judgment in this matter contain a permanent injunction restraining counter-defendants Nicor International Corporation ("Nicor") and Consultores de la Cuenca del Caribe ("Carib") from continuing with any action in the Dominican Republic litigation.

### PRELIMINARY STATEMENT

Due to recent events this emergency motion is filed seeking the Court's disposition of Coastal's previously filed motion for a Final Judgment that includes a permanent injunction.



This motion has been necessitated by counter-defendants' recent actions seeking to garnish and/or attach the assets of Coastal and of Coastal's clients in the Dominican Republic.

This Court has twice ruled that Coastal is entitled to summary judgment on its claim seeking confirmation of the Final Arbitration Award dated August 13, 2001. *See Nicor International Corporation, et al. v. El Paso Corporation*, 292 F. Supp.2d 1357 (S.D. Fla. 2003) (*Nicor I*) and *Nicor International Corporation, et al. v. El Paso Corporation*, 2004 W.L. 1161842 (S.D. Fla. May 25, 2004) (*Nicor II*). Pursuant to Eleventh Circuit precedent Coastal has moved the Court to enjoin the parallel foreign litigation instituted by counter-defendants so as to protect the integrity of its orders.

Despite this Court's orders in *Nicor I* and *Nicor II*, counter-defendants have continued the prosecution of the Dominican Republic litigation in deliberate and flagrant disregard of this Court's decision confirming the Final Arbitration Award. Indeed, on September 29, 2004, Nicor and Carib obtained a final judgment of $11,000,000 against Coastal. Counter-defendants are now attempting to execute on Coastal's assets in the Dominican Republic and have begun garnishing bank accounts based on the September 29, 2004 judgment. In order to protect the integrity of this Court's ruling, it should immediately issue a final judgment which enjoins Nicor and Carib from proceeding with the Dominican Republic litigation. *Mutual Service Insurance Company v. Frit Industries, Inc.*, 358 F.3d 1312, 1324-1325 (11th Cir. 2004).

## PROCEDURAL AND FACTUAL BACKGROUND

The Court set forth the relevant facts in this case in *Nicor I*. Coastal set forth the material facts in support of its motion for permanent injunction in its June 21, 2004 memorandum in

support of permanent injunction. This section shall only highlight the facts which necessitate this motion.

Nicor and Carib instituted the instant action seeking to "domesticate" the Dominican Republic sentence as well as alleging numerous causes of action sounding in tort as well as a Florida RICO violation.  Coastal immediately answered and filed a counterclaim seeking confirmation of the arbitration award.  Coastal then moved for summary judgment on all of Nicor and Carib's claims as well as for summary judgment on its claim to confirm the arbitration award.  On November 24, 2003, this Court granted Coastal's motions for summary judgment. *See Nicor I.*

On December 12, 2003, Coastal moved for the entry of a judgment seeking a permanent injunction restraining Nicor and Carib from proceeding with the Dominican Republic litigation. On May 25, 2004, this Court denied counter-defendants' motion for reconsideration (*Nicor* II) and entered the Order so that Nicor and Carib would have notice of the claim for permanent injunction and have an opportunity to address the issue.

Pursuant to this Court's Order in *Nicor II* and this Court's June 15, 2004 Order Adopting Proposed Briefing Schedule the Court sought direction on how it should handle Coastal's request for a permanent injunction and any other remaining issues.  In response on June 21, 2004, Coastal submitted its Memorandum in Support of Its Motion for Permanent Injunction and on July 9, 2004, Coastal filed its Reply Memorandum in Support of Permanent Injunction.  Copies of these pleadings are attached as Exhibits 1 and 2.

Despite this Court's *Nicor I* order granting Coastal's motions for summary judgment and the *Nicor II* order denying counter-defendants' motion for reconsideration, Nicor and Carib have

3

continued with the Dominican Republic litigation.  To this end, on September 29, 2004 counter-defendants obtained a judgment in the amount of $11,000,000 against Coastal.  A copy of the judgment is attached as Exhibit 3.  Subsequent to the September 29, 2004, judgment, counter-defendants have begun to execute on the judgment by freezing certain bank accounts.  A copy of a letter confirming the  freezing of certain bank accounts is attached as Exhibit 4 and of a motion seeking attachment of monies as Exhibit 5.

<div align="center">

**ARGUMENT**

**COASTAL IS ENTITLED TO AN  INJUNCTION PROHIBITING
NICOR AND CARIB FROM  PROCEEDING WITH THE
DOMINICAN REPUBLIC LITIGATION ON AN EMERGENCY BASIS**

</div>

**A.      Entry of a Permanent Injunction on an Emergency Basis is Necessary**.

At the time that Coastal first requested the entry of a permanent injunction counter-defendants had not yet obtained a final judgment.  However, as evidenced by the entry of a judgment, counter-defendants have finally obtained a final judgment in the Dominican Republic litigation.  Furthermore, in complete disregard of this Court's orders, counter-defendants are attempting to execute on this final judgment.  Absent a permanent injunction, this Court's orders will be ignored with impunity by Nicor and Carib.  Coastal is suffering significant harm by having its assets in the Dominican Republic attached.  Pursuant to the Court's rulings on the merits of this action, Coastal is entitled to a permanent injunction.

**B.      The Court is Authorized to Enter a Permanent Injunction.**

As set forth in Coastal's initial memorandum in support of a permanent injunction, a copy of which is attached as Exhibit 1, under the All Writs Act, "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."   28 U.S.C.A.

<div align="center">4</div>

§ 1651(a) (2002).  The Act empowers district courts to enjoin persons subject to their jurisdiction

from prosecuting foreign suits.  *Commercializadora Portimex, S.A. v. Zen-Noh Grain Corp.*, 202

W.L. 31697710 (E.D. L.A. Dec. 3, 2002).  It is well settled among the circuits which have

reviewed the grant of an anti-suit injunction that federal courts have the power to enjoin persons

subject to the jurisdiction from prosecuting foreign suits.  *Mutual Service, supra; Laker Airways,*

*supra.*  Indeed, this Court in its Order explicitly recognized the Court's inherent authority to issue

such an injunction when it stated:

> Additionally, the fact that the Final Arbitration Award did not
> award injunctive relief to Coastal is of no moment since the Court
> has the inherent authority to enjoin parties from pursuing litigation
> in a foreign tribunal in appropriate circumstances. (*citing Mutual*
> *Service, supra*, and *Laker Airways, supra.*)

<div align="center">Order, p.2</div>

With respect to the protection of jurisdiction, the *Laker Airways* court recognized that the

request for an anti-suit injunction may arise either before or after a judgment has been entered in

a case.  In that regard, the court concluded that:

> The policies that guide the exercise of discretion vary slightly in
> each situation.  When the injunction is requested after a previous
> judgment on the merits, there is little interference with the rules
> favoring parallel proceedings in matters subject to concurrent
> jurisdiction.  ***Thus, a court may fully protect the integrity of its***
> ***judgments by preventing their evasion through vexatious or***
> ***oppressive relitigation.*** (emphasis added.)

<div align="center">*Laker Airways*, 731 F.2d 927-928.</div>

It is exactly this policy that the Eleventh Circuit cited in *Mutual Service* when it affirmed

the issuance of an anti-suit injunction after the entry of a judgment.  In that case plaintiffs

requested that certain foreign insurers parties to the litigation be permanently enjoined from

<div align="center">5</div>

continuing to litigate an already decided issue on the Isle of Man.  In affirming the district court's

grant of an anti-suit injunction, the Eleventh Circuit stated:

> The district court issued the injunction *after* it issued its opinion on
> the duty to defend the issue.  Abstention at this point would be
> illogical, because the district court had already issued a binding
> decision on the same issue  Inter-Industry was trying to litigate in
> the Isle of Man.
>
> ... In this case, the "only conceivable benefit that [the foreign
> defendants] would reap if the district court's injunction were
> overturned would be the right to attack the pending United States
> action in a foreign court."  *Laker Airways*, 731 F.2d at 915.  We
> hold that the district court did not abuse its discretion in issuing the
> permanent injunction.

*Mutual Service*, 358 F.3d at 324-325.

Thus, in *Mutual Service*, the Eleventh Circuit recognized that a district court should protect the

integrity of its orders by issuing anti-suit injunctions.

In *Nicor I*, this Court found that the Dominican Republic proceeding was contrary to the

parties' agreement and that the Final Arbitration Award should be confirmed.  *Nicor I*, 292 F.

Supp.2d at 1367 and 1371.  The only purpose of Nicor and Carib's continued prosecution of the

Dominican Republic litigation is to circumvent this Court's ruling.

6

## CONCLUSION

Based upon the foregoing argument and authority, Coastal seeks the entry of a Final Judgment that confirms the orders of the Arbitration Award as well as enjoining Nicor and Carib from proceeding with the Dominican Republic litigation and requiring them to dismiss that litigation.

<div style="margin-left: 40%;">

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Defendants/Counter-plaintiffs
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By

PEDRO J. MARTINEZ-FRAGA
Florida Bar No. 752282
LUIS M. O'NAGHTEN
Florida Bar No. 622435

John Shoemaker, Esq.
Co-Counsel for Defendants/Counter-plaintiffs
El Paso Corporation
1001 Louisiana Street
Houston, Texas 77002

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by facsimile transmission and U.S. mail this _____ day of December, 2004, to: **David I. Katzman, Esq.**, Schaden, Katzman, Lampert & McClune, 100 West Big Beaver Road, Suite 130, Troy, Michigan 48084.

<div style="margin-left: 40%;">

LUIS M. O'NAGHTEN

</div>

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

# EXHIBIT "1"



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 02-21769-CIV-MARRA

MAGISTRATE JUDGE SELTZER

NICOR INTERNATIONAL CORPORATION
and CONSULTORES DE LA CUENCA DEL
CARIBE a/k/a CARIB CONSULT,

        Plaintiffs,

v.

EL PASO CORPORATION f/k/a OCEANO
CORPORATION or THE COASTAL
CORPORATION (later THE EL PASO
ENERGY CORPORATION),

        Defendants.

_____/

## COASTAL'S MEMORANDUM IN SUPPORT OF
## ITS MOTION FOR ENTRY OF PERMANENT INJUNCTION

    Counter-plaintiff, The Coastal Corporation (hereinafter "Coastal"), files this memorandum pursuant to this Court's Order on Counter-plaintiff/defendant's Emergency Motion for Entry of Judgment entered on May 25, 2004 (the "Order") and this Court's June 15, 2004 Order Adopting Proposed Briefing Schedule. In this memorandum Coastal provides support for its request that the final judgment in this matter contain a permanent injunction restraining counter-defendants Nicor International Corporation ("Nicor") and Consultores de la Cuenca del Caribe ("Carib") from continuing with the Dominican Republic litigation.[1]

_____

[1]    Coastal's request for a permanent injunction is contained in the addendum clause to Count I of its counterclaim as well as in its Emergency Motion for Entry of Judgment filed on December 12, 2003 (the "Emergency

## PRELIMINARY STATEMENT

This Court has twice ruled that Coastal is entitled to summary judgment on its claim seeking confirmation of the Final Arbitration Award dated August 13, 2001.[2] *See Nicor International Corporation, et al. v. El Paso Corporation*, 292 F. Supp.2d 1357 (S.D. Fla. 2003) (*Nicor I*) and *Nicor International Corporation, et al. v. El Paso Corporation*, 2004 W.L. 1161842 (S.D. Fla. May 25, 2004) (*Nicor II*).   Eleventh Circuit precedent provides, and this Court has explicitly recognized, that upon the entry of a judgment on the merits a federal district court may enjoin parallel foreign litigation so as to protect the integrity of its orders.  It has also been held that an anti-suit injunction is appropriate in order to protect important public policy interests of the forum.

Counter-defendants continued prosecution of the Dominican Republic litigation is in deliberate and flagrant disregard of this Court's decision confirming the Final Arbitration Award. Nicor and Carib are simply attempting to circumvent this Court's ruling that Coastal did not breach the Professional Services Agreement and that counter-defendants' prosecution of the Dominican Republic litigation is a breach of that agreement rendering them liable in damages to Coastal.  In order to protect the integrity of this Court's ruling, it should issue a final judgment which enjoins Nicor and Carib from proceeding with the Dominican Republic litigation. *Mutual*

---

Motion").  The Court's Order sought direction on how it should handle Coastal's request for a permanent injunction and any other remaining issues.  Because the Court has already granted summary judgment confirming the Final Arbitration Award this memorandum shall not address the issue of damages to which Coastal is entitled but only the issues raised by the request for permanent injunction. All other issues were fully addressed by Coastal in its Emergency Motion.  Coastal seeks the entry of a final judgment in the form attached as Exhibit 1.

[2]     The Final Arbitration Award was issued by the International Court of Arbitration ("ICA") of the International Chamber of Commerce ("ICC") in the arbitration case styled *The Coastal Corporation (USA) v. Nicor International Corporation (Panama) and Consultores de la Cuenca del Caribe, S.A. a/k/a Carib Consult (Dominican Republic)*, Case No. 10681/KGA.

2

*Service Insurance Company v. Frit Industries, Inc.*, 358 F.3d 1312, 1324-1325 (11ᵗʰ Cir. 2004).
In addition, such a permanent injunction is necessary to protect Florida's strong public policy in
favor of arbitration. *Laker Airways, Ltd. v. Sabena Belgium World Airlines*, 731 F.2d 909, 931
(D.C. Cir. 1984).

## PROCEDURAL AND FACTUAL BACKGROUND

The Court set forth the relevant facts in this case in *Nicor I*. This section shall only
highlight the facts relevant to the issuance of injunctive relief sought herein. Unless otherwise
noted the facts are derived from the *Nicor I* decision.

On January 22, 1993, Coastal and Nicor entered into a Professional Services Agreement
("PSA") under which Nicor agreed to provide prospective consulting services to Coastal. The
PSA contains the following arbitration provision:

> Any dispute arising in connection with this Agreement shall be
> finally settled under the Rules of Conciliation and Arbitration of
> the International Chamber of Commerce by a single arbitrator
> appointed in accordance with said Rules. The arbitration
> proceeding shall take place in the City of Dallas, Texas, U.S.A.
> and be conducted in English.

PSA ¶ 6.

By letter dated August 9, 1995, Nicor asserted that Coastal was in breach of the PSA. On
August 18, 1995, Nicor presumably assigned its rights under the PSA to Carib. On
September 29, 1995, Carib filed suit in the Dominican Republic against Coastal based on the
alleged breach of the PSA.

Although the trial court in the Dominican Republic first ruled that it did not have
jurisdiction to hear and decide the lawsuit because of the agreement to arbitrate, the Dominican

3

Republic Appellate Court "repealed" the lower court's judgment based, in part, on its finding that Coastal had "renounced" arbitration.

On October 4, 1999, Coastal submitted a Request for Arbitration before the ICA of the ICC naming both Nicor and Carib as respondents. The Request for Arbitration dealt with identical issues raised in the Dominican Republic litigation. On December 14, 2000, the arbitrator entered an Award on Jurisdiction finding that Coastal had not waived its rights to arbitrate and that it had jurisdiction to hear the parties' dispute. On August 13, 2001, the arbitrator issued a Final Award finding in favor of Coastal on all issues with respect to the claimed breach of the PSA.

On September 6, 2001, the Dominican Republic Court of Appeals issued a "sentence" in favor of Nicor wherein the Court declared that Coastal had breached the PSA and was liable for unspecified damages arising out of the breach.

Nicor and Carib subsequently instituted the instant action seeking to "domesticate" the Dominican Republic sentence as well as alleging numerous causes of action sounding in tort as well as a Florida RICO violation. Coastal immediately answered and filed a counterclaim seeking confirmation of the arbitration award. Coastal then moved for summary judgment on all of Nicor and Carib's claims as well as for summary judgment on its claim to confirm the arbitration award. On November 24, 2003, this Court granted Coastal's motions for summary judgment. *See Nicor I.*

Despite the *Nicor I* decision, Nicor and Carib have continued to prosecute the Dominican Republic litigation. On December 12, 2003, Coastal moved for the entry of a judgment seeking a permanent injunction restraining Nicor and Carib from proceeding with the Dominican

4

Republic litigation.   On May 25, 2004, this Court denied counter-defendants' motion for reconsideration (*Nicor* II) and entered the Order so that Nicor and Carib would have notice of the claim for permanent injunction and have an opportunity to address the issue.

## ARGUMENT

### COASTAL IS ENTITLED TO AN INJUNCTION PROHIBITING NICOR AND CARIB FROM PROCEEDING WITH THE DOMINICAN REPUBLIC LITIGATION

**A.      The Court is Authorized to Enter a Permanent Injunction.**

Under the All Writs Act, "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.A. § 1651(a) (2002).   The Act empowers district courts to enjoin persons subject to their jurisdiction from prosecuting foreign suits. *Commercializadora Portimex, S.A. v. Zen-Noh Grain Corp.*, 202 W.L. 31697710 (E.D. L.A. Dec. 3, 2002).   It is well settled among the circuits which have reviewed the grant of an anti-suit injunction that federal courts have the power to enjoin persons subject to the jurisdiction from prosecuting foreign suits. *Mutual Service, supra; Laker Airways, supra; Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996); *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349 (6th Cir. 1992); *China Trade & Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2nd Cir. 1987); *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852 (9th Cir. 1981) (*cert. denied*), 457 U.S. 1105, 102 Sup. Ct. 2902, 73 L. Ed.2d 1313 (1982).   Indeed, this Court in its Order explicitly recognized the Court's inherent authority to issue such an injunction when it stated:

5

> Additionally, the fact that the Final Arbitration Award did not award injunctive relief to Coastal is of no moment since the Court has the inherent authority to enjoin parties from pursuing litigation in a foreign tribunal in appropriate circumstances. (*citing Mutual Service, supra*, and *Laker Airways, supra*.)

<div align="center">Order, p.2</div>

In the seminal case on the issue, *Laker Airways*, the D.C. Circuit identified two circumstances where injunctions are appropriate: (1) in order to protect the jurisdiction of the enjoining court, or (2) to prevent a litigant's evasion of the important public policies of the forum. *Laker Airways*, 731 F.2d at 927. Both circumstances are here present and militate in favor of an injunction.

**B.     The Injunction is Necessary to Protect the Integrity of this Court's Order.**

With respect to the protection of jurisdiction, the *Laker Airways* court recognized that the request for an anti-suit injunction may arise either before or after a judgment has been entered in a case. In that regard, the court concluded that:

> The policies that guide the exercise of discretion vary slightly in each situation. When the injunction is requested after a previous judgment on the merits, there is little interference with the rules favoring parallel proceedings in matters subject to concurrent jurisdiction. ***Thus, a court may fully protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation.*** (emphasis added.)

<div align="center">*Laker Airways*, 731 F.2d 927-928.</div>

It is exactly this policy that the Eleventh Circuit cited in *Mutual Service* when it affirmed the issuance of an anti-suit injunction after the entry of a judgment. The *Mutual Service* case involved an insurance claim in which the issue of the duty to defend was being litigated. Certain foreign insurers were litigating the identical issue with respect to identical parties on the Isle of

<div align="center">6</div>

Man.  After the district court issued its final ruling on the issue of the duty to defend, plaintiffs requested that the foreign insurers be permanently enjoined from continuing to litigate that issue on the Isle of Man.  In affirming the district court's grant of an anti-suit injunction, the Eleventh Circuit stated:

> The district court issued the injunction *after* it issued its opinion on the duty to defend the issue.  Abstention at this point would be illogical, because the district court had already issued a binding decision on the same issue  Inter-Industry was trying to litigate in the Isle of Man.
>
> … In this case, the "only conceivable benefit that [the foreign defendants] would reap if the district court's injunction were overturned would be the right to attack the pending United States action in a foreign court." *Laker Airways*, 731 F.2d at 915.  We hold that the district court did not abuse its discretion in issuing the permanent injunction.
>
> *Mutual Service*, 358 F.3d at 324-325.

Thus, in *Mutual Service*, the Eleventh Circuit recognized that a district court should protect the integrity of its orders by issuing anti-suit injunctions.

In *Nicor I*, this Court found that the Dominican Republic proceeding was contrary to the parties' agreement and that the Final Arbitration Award should be confirmed.  *Nicor I*, 292 F. Supp.2d at 1367 and 1371.  The only purpose of Nicor and Carib's continued prosecution of the Dominican Republic litigation is to circumvent this Court's ruling.  Under these circumstances it is appropriate to enter an anti-suit injunction. *See Mutual Service, supra.  See also, Four Seasons Hotels and Resorts v. Consorcio Barrsa*, 267 F. Supp.2d 1335 (S.D. Fla. 2003) (Judge Moore enters an anti-suit injunction preventing foreign litigation upon confirming an arbitration award).

7

**C.    The Injunction is Necessary to Protect Florida's Public Policy Favoring Arbitration.**

In *Laker Airways* the D.C. Circuit also concluded that "anti-suit injunctions are also justified when necessary to prevent litigant's evasion of a forum's important public policies." *Laker Airways*, 731 F.2d at 931.   As an example, *Laker Airways* identified that an anti-suit injunction would be appropriate if the primary purpose of the foreign action is to avoid the regulatory effect of the domestic forum's statutes. *Laker Airways*, 731 F.2d at 932, fn. 73. *Laker Airways* went on to find that when considering the factor of public policy:

> The only guideline which emerges is the necessity of evaluating the merits of each claim in light of particular equitable circumstances surrounding the dual litigation. ... An impermissible evasion is much more likely to be found when the party attempts to elude compliance with a statute of specific applicability upon which the party seeking an injunction may have relied, and which is designated to effectuate important state policies.

> *Lake Airways*, 731 F.2d at 932, fn. 73.

The Court should enjoin Nicor and Carib from proceeding with the Dominican Republic litigation in order to protect Florida's strong public policy in favor of arbitration. In *Nicor II*, this Court recognized that "there is a strong public policy in the State of Florida in favor of arbitration in a means of settling disputes (citations omitted)." *Nicor II* at *3.  Furthermore, this Court recognized that:

> The decision by the court of the Dominican Republic which Plaintiffs asked this Court to recognize is antithetical to the strong public policy in the State of Florida favoring arbitration. ... ***The decision of the Dominican court to find a waiver of arbitration based on an insubstantial set of facts imbued with uncertainty was contrary and offensive to Florida's strong public policy to resolve all doubts about waiver in favor of arbitration.*** (emphasis added)

> *Nicor II* at *4.

8

Nicor and Carib's insistence on continuing to litigate in the Dominican Republic is in deliberate disregard of Florida's strong policy consideration favoring arbitration. Indeed, Coastal relied on the policy favoring arbitrations when it entered into the PSA and agreed to the arbitration provision. It is exactly this type of public policy consideration that militates in favor of granting an anti-suit injunction. *Laker Airways, supra.*

## CONCLUSION

Based upon the foregoing argument and authority, Coastal seeks the entry of a Final Judgment that confirms the orders of the Arbitration Award as well as enjoining Nicor and Carib from proceeding with the Dominican Republic litigation and requiring them to dismiss that litigation.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Defendants/Counter-plaintiffs
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By _____
PEDRO J. MARTINEZ-FRAGA
Florida Bar No. 752282
LUIS M. O'NAGHTEN
Florida Bar No. 622435

and

Micael S. Yauch, Esq.
Co-Counsel for Defendants/Counter-plaintiffs
2431 Addison
Houston, Texas 77030

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by facsimile transmission and U.S. mail this 21st day of June, 2004, to: **David I. Katzman, Esq.**, Schaden, Katzman, Lampert & McClune, 100 West Big Beaver Road, Suite 130, Troy, Michigan 48084.

LUIS M. O'NAGHTEN

\\MIA-SRV01\712521v02

10

# EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 02-21769-CIV-MARRA

MAGISTRATE JUDGE SELTZER

NICOR INTERNATIONAL CORPORATION
and CONSULTORES DE LA CUENCA DEL
CARIBE a/k/a CARIB CONSULT,

      Plaintiffs,

v.

EL PASO CORPORATION f/k/a OCEANO
CORPORATION or THE COASTAL
CORPORATION (later THE EL PASO
ENERGY CORPORATION),

      Defendants.

_____/

## FINAL JUDGMENT

THIS ACTION came on for summary judgment hearing before the Court, the Honorable Kenneth A. Marra, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered, it is

ORDERED and ADJUDGED that:

1.    Plaintiffs, Nicor International Corporation ("Nicor") and Consultores de la Cuenca del Caribe a/k/a Carib Consult ("Carib") take nothing by this action and that the Second Amended Complaint be dismissed on the merits.

2.    That counter-defendant, El Paso Corporation or The Coastal Corporation ("Coastal") is entitled to the following:

CASE NO. 02-21769-CIV-MARRA

(a)      That the Final Arbitration Award issued on August 13, 2001 in the matter styled *The Coastal Corporation (USA) v. Nicor International Corporation (Panama), and Consultores de la Cuenca del Caribe, S.A., aka Carib Consult (Dominican Republic),* International Court of Arbitration, Case No. 10681/KGA, attached to this order as Exhibit "1", is hereby confirmed and is to be treated as a judgment of this Court;

(b)      That Coastal recover forthwith from defendants Nicor and Carib, jointly and severally, the sum of $865,218.85, with interest thereon at the annual rate of 1.37% and its costs of the action, all for which let execution issue;

(c)      That Nicor and Carib are permanently restrained from continuing to prosecute or take any action with respect to the Dominican Republic litigation except that they are mandated to immediately dismiss all legal claims either have presented in the Dominican Republic courts.

DATED at Fort Lauderdale, Florida, this __ day of July, 2004.

_____

CLERK OF COURT

Copies furnished to:

Pedro J. Martinez-Fraga, Esq.
Luis M. O'Naghten, Esq.
David I. Katzman, Esq.
John McClune, Esq.

# EXHIBIT "2"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 02-21769-CIV-MARRA

MAGISTRATE JUDGE SELTZER

NICOR INTERNATIONAL CORPORATION
and CONSULTORES DE LA CUENCA DEL
CARIBE a/k/a CARIB CONSULT,

        Plaintiffs,

v.

EL PASO CORPORATION f/k/a OCEANO
CORPORATION or THE COASTAL
CORPORATION (later THE EL PASO
ENERGY CORPORATION),

        Defendants.
_____/

**COASTAL'S REPLY MEMORANDUM  IN SUPPORT OF
ITS MOTION FOR ENTRY OF PERMANENT INJUNCTION**

        Counter-plaintiff, The Coastal Corporation (hereinafter "Coastal"), files this reply

memorandum in further support of its request that the final judgment in this matter contain a

permanent injunction restraining counter-defendants Nicor International Corporation ("Nicor")

and Consultores de la Cuenca del Caribe ("Carib") from continuing with the Dominican

Republic litigation.

**PRELIMINARY STATEMENT**

        Nicor and Carib's response fails to address the fundamental premise of Coastal's motion

seeking entry of a permanent injunction:  that the Court must enter an injunction in order to

protect the integrity of its ruling on the merits in this case.  As noted in Coastal's initial

memorandum, counter-defendants continue to prosecute the litigation in the Dominican Republic seeking the entry of a final judgment awarding damages against Coastal despite this Court's ruling confirming the Final Arbitration Award finding that Coastal did not breach the Professional Service Agreement and that Nicor did breach the PSA. Eleventh Circuit precedent provides, and this Court has explicitly recognized, that upon the entry of a judgment on the merits a federal district court may enjoin parallel foreign litigation so as to protect the integrity of its orders.

In an ostrich-like manner, counter-defendants' response in opposition to the entry of a permanent injunction ignores this Court's rulings on the merits confirming the Final Arbitration Award.[1]  Instead, in what appears to be a summer rerun of an already canceled series, counter-defendants argue, for the third time, that the doctrines of abstention and comity are somehow applicable, this time mandating that this Court deny Coastal's request for a permanent injunction. However, the Eleventh Circuit ruled in *Mutual Service Insurance Company v. Frit Industries, Inc.*, 358 F.3d 1312, 1324 (11th Cir. 2004) that the doctrine of abstention is inapplicable once a ruling on the merits has been reached.  Counter-defendants' memorandum in opposition to Coastal's motion is simply unresponsive to the arguments set forth Coastal's memorandum in support of its motion for permanent injunction.  In order to protect the integrity of this Court's rulings, a permanent injunction must be entered restraining counter-defendants from continuing with the Dominican Republic litigation.

---

[1]    This Court has twice ruled that Coastal is entitled to summary judgment on its claim seeking confirmation of the Final Arbitration Award dated August 13, 2001.  *See Nicor International Corporation, et al. v. El Paso Corporation*, 292 F. Supp.2d 1357 (S.D. Fla. 2003) (*Nicor I*) and *Nicor International Corporation, et al. v. El Paso Corporation*, 2004 W.L. 1161842 (S.D. Fla. May 25, 2004) (*Nicor II*).

2

## ARGUMENT

### A.   The Court is Authorized to Enter a Permanent Injunction.

Counter-defendants' response appears to begin with the astounding proposition that the injunction should not be granted because this Court does not have the competence to enter such an injunction. Counter-defendants' base such an argument on the following arguments: (1) the Final Arbitration Award did not issue an injunction, (2) such an injunction would violate federal law of abstention, and (3) that counter-defendants are, somehow, not subject to the Court's jurisdiction. Counter-defendants are wrong.

The Court has already ruled that simply because the final arbitration award does not contain an injunction does not prevent this Court from issuing an injunction.

> Additionally, the fact that the Final Arbitration Award did not award injunctive relief to Coastal is of no moment since the Court has the inherent authority to enjoin parties from pursuing litigation in a foreign tribunal in appropriate circumstances. (*citing Mutual Service, supra*, and *Laker Airways, Ltd. v. Sabena Belgium World Airlines*, 731 F.2d 909, 931 (D.C. Cir. 1984).)

> Order on Counter-plaintiff/defendant's Emergency Motion for Entry of Judgment, dated May 25, 2004 , p.2

There is ample authority supporting this Court's statement.  *See* All Writs Act,  28 U.S.C.A. § 1651(a) (2002) ("the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). *See also   Mutual Service, supra; Laker Airways, supra; Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996); *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349 (6th Cir. 1992); *China Trade & Development Corp. v. M.V. Choong Yong*, 837 F.2d 33

3

(2nd Cir. 1987); *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852 (9th Cir. 1981) (*cert. denied*), 457 U.S. 1105, 102 Sup. Ct. 2902, 73 L. Ed.2d 1313 (1982).

With respect to counter-defendants' assertion that the Court does not have jurisdiction over Nicor and Carib to enter a preliminary injunction, nothing more need be mentioned other than the fact that Nicor and Carib filed this action and took advantage of the Court's jurisdiction to assert their claims. It is beyond cavil that a party who subjects himself to the jurisdiction of a court, even where he would not otherwise be subject to suit, becomes subject to any valid claim asserted against him. *Hoxsey v. Hoffpauir*, 180 F.2d 84 (5th Cir. 1950).[2] Counter-defendants simply can not invoke the jurisdiction of the Court to domesticate an order obtained in the Dominican Republic litigation but remain immune from the jurisdiction of the Court when the Court issues a ruling on a compulsory counter-claim.

**B.      Nicor's and Carib's Response Ignores the Case Law Regarding Permanent Injunctions**

In arguing against the imposition of a permanent injunction, counter-defendants fail to address the central issue presented to the Court: whether a permanent injunction is appropriate in this instance because the Court has granted the motion for summary final judgment confirming the Final Arbitration Award. As set forth in Coastal's initial memorandum, the *Laker Airways* court recognized that the request for an anti-suit injunction may arise either before or after a judgment has been entered in a case. In that regard, the court concluded that:

---
[2]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4

The policies that guide the exercise of discretion vary slightly in each situation. ***When the injunction is requested after a previous judgment on the merits, there is little interference with the rules favoring parallel proceedings in matters subject to concurrent jurisdiction.*** Thus, a court may fully protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation. (emphasis added.)

*Laker Airways*, 731 F.2d 927-928.

The Eleventh Circuit in *Mutual Service* recognized the distinction and stated:

> ***The district court issued the injunction after it issued its opinion on the duty to defend the issue. Abstention at this point would be illogical, because the district court had already issued a binding decision*** on the same issue Inter-Industry was trying to litigate in the Isle of Man.
>
> … In this case, the "only conceivable benefit that [the foreign defendants] would reap if the district court's injunction were overturned would be the right to attack the pending United States action in a foreign court." *Laker Airways*, 731 F.2d at 915. We hold that the district court did not abuse its discretion in issuing the permanent injunction. (emphasis added.)

*Mutual Service*, 358 F.3d at 324-325.

Counter-defendants do not address this distinction.   Instead, the cases discussed in counter-defendants' response involve preliminary injunctions sought well before a decision on the merits has been reached by a district court, not permanent injunctions after a decision on the merits. *Western Elec. Co. v. Milgo Elec. Corp.*, 450 F.Supp. 835 (S.D. Fla. 1975) (decision regarding the appropriateness of a preliminary injunction); *China Trade & Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2nd Cir. 1987) (same); *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349 (6th Cir. 1992) (same); *Cryomedics v. Frigitronics of Conn., Inc.*, 1977 W.L. 22807 (D. Conn. 1977) (decision regarding appropriateness of injunctive relief prior to decision on the merits).

5

Counter-defendants also cite *Brinco Mining, Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233 (D. D.C. 1982), *Boushel v. Toro Co.*, 985 F.2d 406 (8th Cir. 1993), and *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209 (11th Cir. 1999) but these cases have even less application to the instant motion than the previous cases discussing preliminary injunctions. These cases involve U.S. district courts staying lawsuits pending before them in favor of allowing foreign proceedings to continue. This Court has already granted summary judgment in this matter; the *Brinco*, *Boushel*, and *Posner* decisions are simply irrelevant to the issue before the Court. Counter-defendants' reliance on *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994) is equally irrelevant for these same reasons. Moreover, the continued reliance on the abstention doctrine by counter-defendants is misplaced given the Eleventh Circuit's ruling, quoted earlier, that abstention after a decision on the merits would simply be illogical. *Mutual Service*, 358 F.3d at 324-325 ("The district court issued the injunction after it issued its opinion on the duty to defend the issue. Abstention at this point would be illogical, because the district court had already issued a binding decision on the same issue ...").

In *Nicor I*, this Court found that the Dominican Republic proceeding was contrary to the parties' agreement and that the Final Arbitration Award should be confirmed. *Nicor I*, 292 F. Supp.2d at 1367 and 1371. *Nicor II* reaffirmed this decision. Nicor and Carib's continued prosecution of the Dominican Republic litigation is intended to circumvent this Court's ruling. The Court should enter a permanent injunction mandating counter-defendants to cease all such activities in the Dominican Republic in order to protect the integrity of its order as well as Florida's important public policy concern favoring arbitrations. *See Mutual Service, supra.*,

6

*Laker Airways, supra.*   Counter-defendants have provided no basis for denying the motion

seeking a permanent injunction.

**C.      There is no basis to contest the Arbitrator's award**

In its Order on counter-plaintiff/defendant's Emergency Motion for Entry of Judgment

entered on May 25, 2004, the Court expressly stated that

> The Court notes that it has already granted summary judgment
> confirming the Final Arbitration Award, and thus Nicor and
> Carib's argument concerning the propriety of the award of costs
> and fees granted by the Sole Arbitrator is untimely.

Order, p.2.

Despite this Court's admonition that the argument regarding attorneys' fees and costs is

untimely, counter-defendants nonetheless argue that there exists no legal authority for the Sole

Arbitrator to have awarded costs and attorney's fees.[3]

However, the award of damages in the Final Arbitration is amply supported by legal

authority.  With respect to the attorneys' fees and costs awarded by the Sole Arbitrator, it must

be noted that the damages awarded are in two categories:  (1) attorneys' fees and costs incurred

by Coastal in the Dominican Republic litigation and (2) costs of arbitration.  With respect to the

first category of damages, the arbitrator ruled that Coastal's damages resulting from Nicor and

Carib's breach of the PSA were the fees incurred in defending the frivolous suit in the

Dominican Republic:

> To the extent that the Sole Arbitrator has already held in the Partial
> Award with respect to jurisdiction that the PSA included a valid
> and enforceable arbitration agreement, the domestic proceedings

---

[3]      In addition to asserting a lack of legal authority, in footnote 3 of their response, counter-defendants make the
additional argument that the arbitration was improper due to bias.  In this regard, for the first time, counter-
defendants make the outlandish (and offensive) statement that the arbitrator "actually counseled Coastal during
the paper arbitration."  This statement is made without any citation to record evidence and is untrue.

7

initiated and followed by Respondents constitute a breach of the duty to arbitrate, as set forth in Section 6 if the PSA.  Further, Coastal has prevailed in its claims in this arbitration.  **The injury Coastal has suffered as a result of Respondents' conduct is the costs and expenses incurred as a result of the need to litigate in the Dominican Republic the domestic legal proceedings which should have been submitted to arbitration.** (emphasis added.)

Final Arbitration Award, ¶ 104

There exists ample legal authority for the Sole Arbitrator's decision.  *Anchor Motor Freight, Inc. v. Int'l. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, local Union No. 377*, 700 F.2d 1067 (6th Cir. 1983) (allowing claim for attorneys fees and costs as damages incurred in defending against a lawsuit that was instituted in violation of covenant not to sue), *Widner v. Arco Oil and Gas Co.*, 717 F. Supp. 1211 (N.D. Tex.. 1989) (claim for attorneys fees and costs incurred in defending wrongfully brought action allowed), *Massey v. Columbus State Bank*, 35 S.W.3d 697 (Tex. App. 2000) (attorneys fees and other litigation expenses allowed when a party is required to defend a previous lawsuit as a consequence of a wrongful act by opposing party), *IBP, Inc. v. Klumpe*, 101 S.W.3d 461 (Tex. App. 2001) (same).

With respect to the second category of damages, costs of arbitration, the Sole Arbitrator engaged in an exhaustive analysis of the law of international arbitrations and the ability to award such damages. *See* Final Arbitration Award, ¶¶ 107-122.  Based in part on Article 31 of the ICC rules, which the parties themselves agreed to, the Sole Arbitrator awarded certain costs of arbitration.

8

## CONCLUSION

Based upon the foregoing argument and authority, Coastal seeks the entry of a Final Judgment that confirms the orders of the Arbitration Award as well as enjoining Nicor and Carib from proceeding with the Dominican Republic litigation and requiring them to dismiss that litigation. Coastal also seeks the final judgment to award the damages provided for in the Final Arbitration Award.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Defendants/Counter-plaintiffs
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: _____

PEDRO J. MARTINEZ-FRAGA
Florida Bar No. 752282
LUIS M. O'NAGHTEN
Florida Bar No. 622435

and

Micael S. Yauch, Esq.
Co-Counsel for Defendants/Counter-plaintiffs
2431 Addison
Houston, Texas 77030

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by facsimile transmission and U.S. mail this 9ᵗᵈ day of July, 2004, to: **David I. Katzman, Esq.**, Schaden, Katzman, Lampert & McClune, 100 West Big Beaver Road, Suite 130, Troy, Michigan 48084.

LUIS M. O'NAGHTEN

\\MIA-SRV01\712521v02

10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### Office of the Clerk
### NOTICE OF FILING DISCREPANCY

CASE NO.: _02 21769 CIV Marra_   DATE: _1/9/04_

FROM: _SSW_   OFFICE: _Intake_   PHONE: _305 523-5200_

This office has received document(s) that you filed in the above referenced case. These documents failed to comply with the filing requirements as defined in the Local Rules of this District or the Federal Rules of Civil Procedure. *As a courtesy, we have accepted these document(s), however, we are informing you of the discrepancy.*

 ☐ Bound documents and Attachments (Local Rule 5.1.A.1)

 ☐ Copies for chambers not provided. ( Local Rule 5.1.A.2.)

 ☐ Envelopes not provided.  (Local Rule 7.1.A.4)

 ☒ Filed in the wrong divisional office. Must be filed where the judge is chambered. (Local Rule 5.1.B.)  Miami,  Ft. Lauderdale,  West Palm Beach,  Key West,  Ft. Pierce

 ☐ Insufficient copies provided for consolidated cases.  (Local Rule 5.1.A.8)

 ☐ Sealed Document Procedures not followed. (Local Rule 5.4)

 ☐ The Civil Cover Sheet, JS 44, is incomplete.  (Local Rule 3.3)

 ☐ Document incorrectly captioned.  (Local Rule 5.1.A.5)

  ☐ Incorrect Court  ☐ Incorrect Case Number  ☐ Incorrect Judge

  ☐ Incorrect Style  ☐ Incorrect Title

 ☐ Missing Florida Bar Number from signature block.  (Local Rule 5.1.A.6)

 ☐ Incorrect paper size.  (Local Rule 5.1.A.3)

 ☐ Signature missing or not original on document.  (Rule 11.(a) FRCP)

 ☐ Application for relief in letter form. (Local Rule 7.7)

 ☐ Other _____

---

**Although your document(s) did not comply with the Local Rules of this District, they have been accepted by the Clerk. Please review the Local Rules and comply with restrictions in filing documents in the future. Refer to the back of this form for a listing of the Judges and their location. Your compliance will be greatly appreciated.**

-----------------------------------------------------------------------------------------------

| ☒ Miami | ☐ Fort Lauderdale | ☐ Key West | ☐ West Palm Beach | ☐ Fort Pierce |
|---|---|---|---|---|
| 301 N. Miami Ave | 299 E. Broward Blvd. | 301 Simonton St. | 701 Clematis St. | 300  South 6 th St. |
| Miami, FL 33128 | Ft. Lauderdale, Fl 33301 | Key West, Fl 33040 | W. P. Beach, FL 33401 | Ft. Pierce, FL 34950 |
| 305-523-5200 | 954-769-5400 | 305-295-8100 | 561-803-3400 | 561-595-9691 |

**c: Assigned District Judge**

Rev. 4/17/02

# EXHIBIT "3"



**República Dominicana**
# Poder Judicial

Yo, LUCAS A, GUZMÁN L., Secretario de la Cámara Civil de la Corte de Apelación del Distrito Nacional, CERTIFICO: que en los archivos a mi cargo existe un expediente civil que contiene una sentencia del tenor siguiente: SENTENCIA CIVIL NO. 420 DIOS, PATRIA Y LIBERTAD, EN NOMBRE DE LA REPÚBLICA.

**EXP. CIVIL**
**NO.**

En la ciudad de Santo Domingo, Distrito Nacional, capital de la República Dominicana, hoy día 29 del mes de septiembre del año dos mil cuatro (2004); años 161 de la Independencia y 142 de la Restauración;

LA CÁMARA CIVIL DE LA CORTE DE APELACIÓN DEL DISTRITO NACIONAL, regularmente constituida en audiencia en la sala destinada al efecto, sita en la primera planta del Palacio de Justicia del Centro de los Héroes de Constanza, Maimón y Estero Hondo, compuesta por los señores Magistrados **MANUEL ALEXIS READ ORTÍZ**, Presidente, **MARCOS ANTONIO VARGAS GARCÍA**, Primer Sustituto de Presidente; **HERMÓGENES ACOSTA DE LOS SANTOS**, Segundo Sustituto de Presidente, **XIOMARAH ALTAGRACIA SILVA SANTOS** Jueza Miembro, asistidos del infrascrito secretario y del alguacil de estrados de turno dicta en sus atribuciones civiles la siguiente sentencia:

SOBRE: el procedimiento de liquidación de daños y perjuicios por estado, interpuesto por la compañía CONSULTORES DE LA CUENCA DEL CARIBE, S.A., (CARIB-CONSULT),

*PDC*  1



**República Dominicana**
# Poder Judicial

sociedad comercial organizada y existente de conformidad con las leyes de la República, con domicilio y asiento social en la avenida Pedro Henríquez Ureña No. 169, en esta ciudad, debidamente representada por su Presidente, ING. RAFAEL E. MARTÍNEZ CÉSPEDES, dominicano, mayor de edad, casado, tenedor de la cédula de identidad y electoral No. 001-0088294-3, domiciliado y residente en esta ciudad, la cual tiene como abogados constituídos y apoderados especiales a los DRES. JUAN A. FERRAND, LUIS MEDINA SÁNCHEZ y los LICDOS. FERNANDO RAMÍREZ SAINZ y FRANK REYNALDO FERMÍN, dominicanos, mayores de edad, casados, titulares de las cédulas de identidad y electorales Nos. 001-0785826-8, 001-0163531-6, 001-0101934-7, 001-0727996-0, con estudio profesional abierto en común en la avenida Sarasota esquina Francisco Moreno, suite 302, tercera planta, plaza Kury, sector Bella Vista, en esta ciudad;

CONTRA: EL PASO CGP COMPANY (antes THE COASTAL CORPORATION), sociedad comercial constituida y organizada de acuerdo con las leyes del Estado de Delaware, Estados Unidos de América, con sus oficinas principales en Houston, Estado de Texas, 77046-0995, la cual tiene como abogados constituidos y apoderados especiales a los DRES. RAMÓN A. TAPIA ESPINAL, REINALDO PARED PÉREZ y al LIC. MANUEL RAMÓN TAPIA LÓPEZ, dominicanos, mayores de edad, casados el primero y el cuarto y solteros el segundo y el tercero, respectivamente, provistos de las cédulas de identidad y electorales Nos.001-0777024-0, 001-0076067-7 y 001-0168275-5, con estudio profesional abierto en la casa No.138-A, de

*PDC*   2



**República Dominicana**
# Poder Judicial

la calle Gustavo A. Mejía Ricart, ensanche Piantini, en esta ciudad;

CONTRA: EL PASO POWER COMPANY (antes THE COASTAL POWER COMPANY), entidad comercial organizada bajo las leyes del Estado de Delaware, Estados Unidos de América, con oficinas principales en 1001 Louisiana Street, Houston, TX 77002, Estados Unidos de América, debidamente representada por su Vicepresidente el señor MARK CROKE, norteamericano, mayor de edad, portador del pasaporte norteamericano No.126294914, la cual tiene como abogados constituidos y apoderados especiales al DR. MILTÓN MESSINA y a los LICDOS. PABLO GONZÁLEZ TAPIA, ANA ISABEL MESSINA y ADA GARCÍA VÁSQUEZ, dominicanos, mayores de edad, casados los tres primeros y soltera la última, respectivamente, titulares de las cédulas de identidad y electorales Nos.001-0974503-4, 001-0826656-0, 001-0088318-0 y 001-0077677-2, con estudio profesional abierto en común en la calle Fantino Falco No.55, ensanche Naco, en esta ciudad;

CONTRA: COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A. (CEPP), entidad comercial organizada de acuerdo con las leyes de la República Dominicana, con su domicilio social en la avenida Winston Churchill No.77, segundo nivel del *edificio Comiresa*, en esta ciudad, debidamente representada por su Gerente General el señor MARCOS C. COCHÓN ABUD, dominicano, mayor de edad, provisto de la cédula de identidad y electoral No. 001-0000592-5, domiciliado y

*PDC* 3



**República Dominicana**

# Poder Judicial

residente en esta ciudad, la cual tiene como abogados constituidos y apoderados especiales a los LICDOS. MILVIO COISCOU y CÉSAR BOTELLO CARABALLO, dominicanos, mayores de edad, casados, tenedores de las cédulas de identidad y electorales Nos. 001-0527305-6 y 026-0065177-8, con estudio profesional abierto en común en la calle Manuel Rodríguez Objío No. 12, sector Gascue, en esta ciudad;

OÍDO: al alguacil de turno en la lectura del rol;

OÍDOS: a los abogados de la parte demandante concluir, de la manera siguiente: leyeron conclusiones, las cuales rezan: PRIMERO: COMPROBAR Y DECLARAR, que esta Honorable Cámara Civil y Comercial de la Corte de Apelación de Santo Domingo, en ocasión de un Recurso de Impugnación o Le Contredit, interpuesto por CONSULTORES DE LA CUENCA DEL CARIBE, S. A., (CARIB-CONSULT), contra la Sentencia Civil de fecha 4 de octubre del año 1996, dictada por la Cámara Civil y Comercial de la Primera Circunscripción del Juzgado de Primera Instancia del Distrito Nacional, dictó su última Sentencia Civil No. 336, de fecha 6 de septiembre del año 2001; (...) SEGUNDO: COMPROBAR Y DECLARAR, que la Compañía CONSULTORES DE LA CUENCA DEL CARIBE, S. A., (CARIB-CONSULT) en cumplimiento del ordinal CUARTO de la indicada sentencia; y al tenor de las disposiciones del artículo 523 del Código de Procedimiento Civil, notificó la evaluación de los Daños y Perjuicios a cada una de las codemandadas, mediante acto No.

*PDC*   4



**República Dominicana**
# Poder Judicial

5119/2001 de fecha 13 de Diciembre del año 2001, instrumentado por el Ministerial Juan David Marcial Mateo, Alguacil Ordinario de la Tercera Sala del Juzgado de Primera Instancia del Distrito Nacional; TERCERO: COMPROBAR Y DECLARAR, que mediante ese mismo acto, de fecha 13 de diciembre del 2001, la impugnante o demandante, CONSULTORES DE LA CUENCA DEL CARIBE, S.A., (CARIB-CONSULT), notificó a las codemandadas, la instancia de fecha 12 de diciembre del 2001, contentiva de los documentos y piezas justificativas de la evaluación de los Daños y Perjuicios, comunicados vía secretaría, en la misma fecha; CUARTO: COMPROBAR Y DECLARAR, que mediante el supra indicado acto de fecha 13 de diciembre del 2001, la demandante intimó a las codemandadas, para que en el plazo de la octava y conforme lo prevee el artículo 524 del Código de Procedimiento Civil, hicieran los ofrecimientos, por la suma que estas estimaran los daños y perjuicios; QUINTO: COMPROBAR Y DECLARAR, que las codemandadas, mediante actos Nos. 687/001, 688/001 y 689/001, de fecha 21 de diciembre del 2001, instrumentado por el Ministerial Juan Antonio Almonte, Alguacil Ordinario de la Segunda Sala de la Cámara Penal del Juzgado de Primera Instancia del Distrito Nacional, lejos de hacer los ofrecimientos de las sumas en que ellas debieron estimar los daños y perjuicios, rechazaron la evaluación hecha por la demandante sobre la base de pruebas justificativas; que al producirse la indicada negativa, y en cumplimiento de la parte in fine del Artículo 524, del Código de Procedimiento Civil, la demandante, decidió llevar la discusión y solución

*PDC  5*



**República Dominicana**
# Poder Judicial

de los daños y perjuicios a la jurisdicción competente; EN
CONSECUENCIA y como resultado de los cálculos desarrollados
inextenso en el informe técnico de fecha 4 de diciembre del
2001, realizado por la firma D.C.M., INGENIERIA, S.A.,
contentivo de la compensación a que tiene derecho CARIB-
CONSULT, por los daños y perjuicios sufrido por esta, a
consecuencia de las violaciones contractuales cometidas por
COASTAL CORPORATION y sus demás subsidiarias, tal y como
quedo sentado en la sentencia No. 336 de fecha 6 de
septiembre del 2001, CONDENEIS a THE COASTAL CORPORATION y/o
COASTAL POWER PRODUCTION COMPANY y a la COMPAÑÍA DE
ELECTRICIDAD DE PUERTO PLATA, S. A. (CEPP), al pago inmediato
de las suma de CINCUENTA Y SIETE MILLONES, DOSCIENTOS NOVENTA
Y CUATRO MIL VEINTISÉIS DÓLARES AMERICANOS
(US$7,294,026.00),o su equivalente en pesos dominicanos según
la tasa oficial al momento de su liquidación, monto de la
liquidación a que se ha hecho referencia anteriormente, a
favor de CONSULTORES DE LA CUENCA DEL CARIBE, (CARIB-
CONSULT); SEXTO: QUE CONDENEIS a las codemandadas, al pago de
las costas del procedimiento, ordenando su distracción en
provecho de los abogados de la demandante, quienes afirman
haberlas avanzado en su totalidad (sic);

OÍDOS: a los abogados de la parte demandada EL PASO CGP
COMPANY (antes THE COASTAL CORPORATION), concluir de la
manera siguiente: leyó conclusiones, las cuales rezan:
PRIMERO: Librando acta a EL PASO CGP COMPANY que compareció a
la audiencia del día 8 de enero del 2004 ante esta honorable

*PDC*  6



**República Dominicana**

# Poder Judicial

Corte de Apelación, con el único propósito de articular las conclusiones que preceden, para evitar las consecuencias procesales del defecto, en caso de omisión inadvertida de la interrupción de la presente instancia judicial; SEGUNDO: Declarar que, a causa del fallecimiento del Dr. Ramón A. Tapia Espinal, abogado constituido de la concluyente, la instancia judicial quedó interrumpida de pleno derecho; y Declarar que la misma quedará renovada, una vez que la concluyente constituya nuevo abogado para asumir adecuadamente sus medios de defensa; TERCERO: Ordenar el pago de las costas a cargo de Carib-Consult, y prescribir su distracción en beneficio del abogado actuante, quien os afirma que las avanza en su mayor parte (sic);

OÍDOS: a los abogados de la parte demandada EL PASO POWER COMPANY (antes THE COASTAL COMPANY), concluir in voce, de la manera siguiente: se adhiere a las conclusiones del EL PASO CGP COMPANY(sic);

OÍDOS: a los abogados de la parte demandada COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A., concluir in-voce de la manera siguiente: se adhiere a las conclusiones de EL PASO CGP COMPANY (sic);

OÍDOS: nuevamente a los abogados de la parte demandada EL PASO CGP COMPANY (antes THE COASTAL CORPORATION) concluir in-voce de la manera siguiente: plazo para referirmos al avenir acto No. 3490/2003 de fecha 30 de diciembre de 2003 y

*PDC  7*



**República Dominicana**
# Poder Judicial

para escrito ampliatorio de conclusiones (sic);

OÍDOS: nuevamente a los abogados de la parte demandante concluir in-voce de la manera siguiente: rechazar por improcedente las pretensiones del demandado; que sea acumulado para que sea fallado con el fondo; que se invite al demandado a concluir al fondo (sic);

OÍDA: a la Corte: se invita a la parte recurrida a concluir sobre el fondo subsidiariamente sin que ello implique renunciar a sus conclusiones principales (sic);

OÍDOS: nuevamente a los abogados de la parte demandada EL PASO CGP COMPANY (antes THE COASTAL CORPORATION), concluir in-voce de la manera siguiente: PRIMERO: Comprobar y declarar (1) que por acto número 98/2003 de fecha trece (13) del mes de febrero del año dos mil tres (2003) del ministerial René del Rosario Alcántara, EL PASO CGP COMPANY introdujo ante la Segunda Sala de la Cámara Civil y Comercial del Juzgado de Primera Instancia del Distrito Nacional una demanda en reconocimiento y concesión de exequátur del Laudo Arbitral de fecha trece (13) del mes de agosto del año dos mil uno (2001) dictado a favor de EL PASO CGP COMPANY y en contra de la CONSULTORES DE LA CUENCA DEL CARIBE y la NICOR INTERNATIONAL CORPORATION, por el arbitro Eduardo T. Siqueiros, conforme las reglas del Tribunal Arbitral de la Cámara Internacional de Comercio; (2) que dicha demanda en reconocimiento del laudo y exequátur se encuentra en estado de fallo ante la



**República Dominicana**
# Poder Judicial

citada Segunda Sala; (3) que el laudo arbitral al que se ha hecho referencia declara y resuelve con autoridad de cosa juzgada entre EL PASO CGP COMPANY Y CONSULTORES DE LA CUENCA DEL CARIBE, continuadora jurídica de la NICOR INTERNACIONAL CORPORATION, entre otros asuntos: (a) En ningún momento Nicor fue el representante exclusivo de Coastal en la República Dominicana. (b) Coastal no violó el CSP según lo argumentado por las demandadas, y por lo tanto, Coastal no adeuda a las demandadas suma alguna de dinero como consecuencia de dichas argumentaciones; SEGUNDO: Declarar y comprobar que el Laudo Arbitral antes citado tiene autoridad de cosa juzgada respecto de la sentencia civil 336 dictada por esta honorable Corte de Apelación en fecha seis (6) de septiembre del 2001, la cual sirve de base a la presente demanda en liquidación de daños y perjuicios por estado, en vista de entre otras razones: (a) porque fue dictada por la jurisdicción arbitral acordada por las partes en el Contrato de Servicios Profesionales suscrito entre NICOR INTERNATIONAL CORPORATION y la entonces THE COASTAL CORPORATION, y que como juzgara el referido árbitro, fue cedido irregularmente a la impetrante CONSULTORES DE LA CUENCA DEL CARIBE; (b) porque el Laudo Arbitral no está, como si ha sido objeto la sentencia 336 antes referida, sujeto a ningún recurso y conforme las reglas de la Cámara de Comercio Internacional el mismo se impone a la parte en contra de quien fuera dictado; (c) porque al resolver la contestación suscitada entre CONSULTORES DE LA CUENCA DEL CARIBE, y THE COASTAL CORPORATION, y determinar que esta última no violó el referido Contrato de Servicios

*PDC* 9



**República Dominicana**
# Poder Judicial

Profesionales, y por ende no pudo causar un daño a CaribConsult o a Nicor, el laudo extingue por vía de consecuencia el proceso de liquidación de daños y perjuicios por estado que ha sido intentado por la CONSULTORES DE LA CUENCA DEL CARIBE, obligando a esta corte a sobreseer con carácter definitivo el proceso de que se trata; (d) porque el Laudo Arbitral, en la primera parte de su dispositivo, reconoce y declara una situación jurídica, esto es la no violación del contrato de servicios profesionales ni el haber causado un daño a CaribConsult, por lo cual dicha declaración se impone a la Corte aún estando pendiente el exequátur del laudo arbitral, al tenor de una sentencia recientísima de nuestra Suprema Corte de Justicia, según la cual... "las corrientes doctrinales y jurisprudenciales del país de origen de nuestra legislación sobre la materia, se definen en el sentido casi unánime de considerar que las sentencias declarativas y constitutivas de derechos no necesitan el referido exequátur... porque su ejecución no requiere una realización material, que reclama, generalmente, el auxilio de la fuerza pública"... (Sentencia 8 mayo del 2002); TERCERO: Por una o todas las razones antes expresadas, se ruega a esta honorable Corte ORDENAR el sobreseimiento definitivo del proceso de liquidación de daños y perjuicios incoado por CONSULTORES DE LA CUENCA DEL CARIBE, S. A., al existir una decisión arbitral definitiva y que se impone a las partes, según la cual no se ha causado ningún daño a CaribConsult, y por ende esta Corte ha quedado desapoderada para evaluar los daños y perjuicios a los que se contrae la



**República Dominicana**
# Poder Judicial

presente demanda; plazo de 15 días (sic);

OÍDOS: nuevamente a los abogados de la parte demandada
EL PASO POWER COMPANY (antes THE COASTAL COMPANY) concluir
in-voce de la manera siguiente: nos adherimos (sic);

OÍDOS: nuevamente a los abogados de la parte demandada
COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A., concluir in-
voce de la manera siguiente: nos adherimos (sic);

OÍDOS: nuevamente a los abogados de la parte demandante
concluir in-voce de la manera siguiente: debe ser rechazado
por intemporáneo; que se acumulen los incidentes para que
sean fallados con el fondo (sic);

OÍDA: a la Corte: se pone en mora a la parte recurrida
para que de manera subsidiaria concluya sobre el fondo sin
que ello implique renuncia a sus conclusiones principales
(sic);

OÍDOS: nuevamente a los abogados de la parte demandada
EL PASO CGP COMPANY (antes THE COASTAL CORPORATION) concluir
in-voce de la manera siguiente: PRIMERO: Sobreseer la
presente demanda hasta tanto la Segunda Sala de la Cámara
Civil y Comercial del Juzgado de Primera Instancia del
Distrito Nacional juzgue sobre la petición de reconocimiento
y exequátur del Laudo Arbitral de fecha trece (13) de agosto
del año 2001, dictado a favor de EL PASO CGP COMPANY y en

*PDC* 11



**República Dominicana**
# Poder Judicial

perjuicio de CONSULTORES DE LA CUENCA DEL CARIBE, a fines de evitar contradicción entre lo resuelto por dicha Segunda Sala, y lo que resolverla esa honorable Corte de Apelación; SEGUNDO: Reservar las costas hasta tanto sea reabierto el presente caso, en caso de no haber oposición de la contraparte, y en caso contrario que condenéis a CONSULTORES DE LA CUENCA DEL CARIBE al pago de las mismas, en provecho del abogado infrascrito quien afirma haberlas avanzado en su totalidad (sic);

OÍDOS: nuevamente a los abogados de la parte demandante concluir in-voce de la manera siguiente: ratificamos conclusiones sobre el fondo y solicitamos plazos para depositó de escrito justificativo de conclusiones (sic);

OÍDOS: nuevamente a los abogados de la parte demandada EL PASO CGP COMPANY (antes THE COASTAL CORPORATION), concluir in-voce de la manera siguiente: leyó conclusiones, las cuales rezan: PRIMERO: Declarar radicalmente nulo, o en su defecto irrecibible, el llamado Reporte Técnico de Indemnización, sin firma, preparado para el Dr. Juan A. Ferrand, parte interesada, supuestamente por la DCM Ingeniera, S. A. con fecha 4 de diciembre del 2001; así como todo el procedimiento llevado a efecto en declaración de daños y perjuicios y piezas justificativas; SEGUNDO: Ordenar a las partes en causa proveerse como fuese de derechos; y TERCERO: Imponer las costas a cargo de la demandante y de todo aquél que se oponga a las presentes conclusiones, y distraerlas en beneficio de

*PDC* 12



**República Dominicana**
# Poder Judicial

los abogados actuantes, quienes os afirman que están avanzándolas en su totalidad (sic);

OÍDOS: nuevamente a los abogados de la parte demandada THE PASO POWER COMPANY (antes THE COASTAL COMPANY) concluir in-voce de la manera siguiente: nos adherimos y solicitamos plazo (sic);

OÍDOS: nuevamente a los abogados de la parte demandada EL PASO CGP COMPANY (antes THE COASTAL CORPORATION) concluir in-voce de la manera siguiente: nos adherimos y solicitamos plazo (sic);

OÍDA: a la Corte: se pone en mora a la parte recurrida para que de manera subsidiaria concluya sobre el fondo sin que ello implique renuncia a sus conclusiones principales (sic);

OÍDOS: nuevamente a los abogados de la parte demandada concluir in-voce de la manera siguiente: el Paso CGP Company y Compañía de Electricidad de Puerto Plata solicita vuestra inhibición y el sobreseimiento hasta tanto la Suprema Corte de Justicia conozca la declinatoria sustentada por la exponente (sic);

OÍDOS: nuevamente a los abogados de la parte demandante concluir in-voce de la manera siguiente: ratificamos conclusiones (sic);

*PDC* 13



**República Dominicana**
# Poder Judicial

OÍDA: a la Corte: se libra acta de que el abogado del recurrido, no obstante las invitaciones hecha por esta Corte para que concluya al fondo, no la ha hecho; fallo reservado sobre el fondo de la contestación e incidente; 30 días simultáneos y consecutivos para escrito justificativos de conclusiones; 30 días simultáneos y consecutivos para ambas partes réplica y contrarréplica ((sic);

RESULTA: que mediante instancia depositada por ante la Secretaria de esta Corte, en fecha 8 de marzo de 2004, la parte demandada COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A., solicitó la reapertura de los debates, notificada mediante acto No. 231/04 en fecha 4 de marzo de 2004, diligenciado por el ministerial Ramón Pérez Ramírez, alguacil ordinario de la Cámara Penal de la Corte de Apelación del Distrito Nacional;

RESULTA: que mediante instancia depositada por ante la Secretaria de esta Corte, en fecha 6 de abril de 2004, la parte demandada EL PASO CGP COMPANY (antes THE COASTAL CORPORATION), solicitó la reapertura de los debates, notificada mediante acto No. 440 en fecha 25 de marzo de 2004, diligenciado por el ministerial Pedro J. Chevalier, alguacil de estrados de la Primera Sala de la Cámara Civil y Comercial del Juzgado de Primera Instancia del Distrito Nacional;

*PDC* 14



**República Dominicana**

# Poder Judicial

## A U T O S   V I S T O S :

RESULTA: que con motivo de una DEMANDA EN REPARACIÓN DE
DAÑOS Y PERJUICIOS, incoada por la compañía CONSULTORES DE LA
CUENCA DEL CARIBE, S.A., (CARIB-CONSULT) contra THE COASTAL
CORPORATION, COASTAL POWER PRODUCTION COMPANY y la COMPAÑÍA
DE ELECTRICIDAD DE PUERTO PLATA, S. A. esta Corte, dictó en
fecha 6 de septiembre de 2001, la sentencia No. 336
(expediente No. 141), cuyo dispositivo es el siguiente:

> *"PRIMERO: DECLARA regular y válida en
> cuanto a la forma y justa en cuanto al
> fondo la demanda en reparación de daños y
> perjuicios incoada por la compañía
> CONSULTORES DE LA CUENCA DEL CARIBE, S.
> A. (CARIB CONSULT), contra THE COASTAL
> CORPORATION, THE COASTAL POWER PRODUCTION
> COMPANY y la COMPAÑÍA DE ELECTRICIDAD DE
> PUERTO PLATA, S. A., por haber sido hecha
> de conformidad con la ley; SEGUNDO:
> DECLARA irrecibible o inadmisible la
> demanda en intervención voluntaria hecha
> por la COMMONWEALTH DEVELOPMENT
> CORPORATION, por los motivos dados
> anteriormente; TERCERO: DECLARA regular y
> válida, en cuanto a la forma, pero la*

*PDC 15*



**República Dominicana**
# Poder Judicial

rechaza en cuanto al fondo, por las
razones indicadas más arriba, la demanda
en intervención forzosa incoada por la
COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA,
S. A. (CEPP), contra la CORPORACIÓN
DOMINICANA DE ELECTRICIDAD (C. D.
E.);CUARTO: CONDENA a THE COASTAL
CORPORATION y/o COASTAL POWER PRODUCTION
COMPANY y la COMPAÑÍA DE ELECTRICIDAD DE
PUERTO PLATA, S. A. (CEPP), a pagar a
CONSULTORES DE LA CUENCA DEL CARIBE, S.
A. (CARIB CONSULT), una indemnización
cuyo monto deberá ser liquidado por
estado, de conformidad con los artículos
523 al 525 del Código de Procedimiento
Civil, en moneda nacional, por concepto
de los daños y perjuicios originados con
la violación y desconocimiento del
contrato de servicios profesionales de
fecha 22 de enero de 1993, descrito más
arriba, en otra parte de este fallo;
QUINTO: CONDENA a THE COASTAL CORPORATION
y/o COASTAL POWER PRODUCTION COMPANY y la
COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA,
S. A. (CEPP), al pago de los intereses
legales a partir de la demanda en
justicia, de la suma que resultare de la
liquidación por estado de los daños y



**República Dominicana**

# Poder Judicial

*perjuicios, tal y como se ha dispuesto en*
*el ordinal anterior; SEXTO: CONDENA a*
*THE COASTAL CORPORATION y/o COASTAL POWER*
*PRODUCTION COMPANY y la COMPAÑÍA DE*
*ELECTRICIDAD DE PUERTO PLATA, S. A.*
*(CEPP), al pago de las costas del*
*procedimiento en favor de los DRES. JUAN*
*FERRAND BARBA, LUIS A. MEDINA SÁNCHEZ,*
*FERNANDO RAMÍREZ SAINZ y REINALDO FERMÍN,*
*abogados, quienes han afirmado haberlas*
*avanzado en su totalidad" (sic);*

RESULTA: que mediante instancia recibida en la
secretaría del tribunal en fecha 12 de diciembre del año
2001, la entidad CONSULTORES DE LA CUENCA DEL CARIBE S.A.
(CARIB-CONSULT), depositó la declaración de los daños y
perjuicios hacer liquidación por estado;

RESULTA: que por auto del Presidente de la Corte se fijó
la audiencia del día 31 de enero de 2002, a las nueve horas
de la mañana, para conocer del procedimiento de liquidación
de daños y perjuicios por estado;

RESULTA: que a la audiencia efectivamente celebrada por
la Corte en fecha y hora arriba indicadas comparecieron ambas
partes debidamente representadas por sus abogados
constituídos y apoderados especiales, audiencia que culminó
con la siguiente sentencia in-voce: la Corte ordena: se

*PDC* 17



**República Dominicana**
# Poder Judicial

homologan las conclusiones de las partes y se ordena el
sobreseimiento de la presente  instancia relativa al proceso
de liquidación por estado de daños y perjuicios en virtud de
la sentencia 336 del 6 de septiembre del 2001; hasta tanto la
Suprema Corte de Justicia conozca la demanda en suspensión de
ejecución de la indicada sentencia(sic);

RESULTA: que por auto del Presidente de la Corte se fijó
la audiencia del día 13 de noviembre de 2002, a las nueve
horas de la mañana, para conocer del proceso de liquidación
de daños y perjuicios por estado;

RESULTA: que a la audiencia efectivamente celebrada por
la Corte en fecha y hora arriba indicadas comparecieron ambas
partes debidamente representadas por sus abogados
constituídos y apoderados especiales, audiencia que culminó
con la siguiente sentencia in-voce: la Corte ordena: Primero:
Da cabal cumplimiento a las disposiciones de la sentencia de
esta Corte y mantiene el sobreseimiento hasta tanto la
Suprema Corte de Justicia decida sobre todos las demandas en
suspensión relativas a la sentencia No. 336 del 6 de
septiembre del año 2001; Segundo: se reservan las costas de
la presente instancia (sic);

RESULTA: que a diligencia del abogado de la parte
demandante y previo auto del Presidente de esta Corte, se
fijó la audiencia del día 20 de febrero de 2003, a las nueve
horas de la mañana (9:00 a.m.), para conocer del proceso de

*PDC* 18



**República Dominicana**
# Poder Judicial

liquidación de daños y perjuicios por estado;

RESULTA: que la audiencia del día 20 de febrero de 2003, el rol fue cancelado;

RESULTA: que por auto del Presidente de la Corte se fijó la audiencia del día 17 de diciembre de 2003, a las nueve horas de la mañana, para conocer del proceso de liquidación de daños y perjuicios por estado;

RESULTA: que a la audiencia efectivamente celebrada por la Corte en fecha y hora arriba indicadas comparecieron ambas partes debidamente representadas por sus abogados constituídos y apoderados especiales, audiencia que culminó con la siguiente sentencia in-voce: la Corte ordena: plazo de 15 días entre las partes recurridas para tomar comunicación de documentos (sic);

RESULTA: que por auto del Presidente de la Corte se fijó la audiencia del día 8 de enero de 2004, a las nueve horas de la mañana, para conocer del proceso de liquidación de daños y perjuicios por estado;

RESULTA: que a la audiencia efectivamente celebrada por la Corte en fecha y hora arriba indicadas comparecieron ambas partes debidamente representadas por sus abogados constituídos y apoderados especiales, audiencia que culminó

*PDC* 19



**República Dominicana**
# Poder Judicial

con la siguiente sentencia in-voce: la Corte ordena: fallo reservado sobre el fondo de la contestación e incidentes; 30 días simultáneos y consecutivos para escrito justificativo de conclusiones; 30 días simultáneos y consecutivos para ambas partes réplica y contrarréplica (sic);

VISTO: el documento depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte demandante, en fecha 19 de septiembre de 2002, a cuyo tenor, la pieza depositada es, a saber:

ÚNICO: Resolución No. 1025-2002, de fecha 2 del mes de Julio del año 2002, dictada por EL Pleno de la Suprema Corte de Justicia del Distrito Nacional (sic);

VISTO: el documento depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte demandante, en fecha 8 de noviembre de 2002, a cuyo tenor, la pieza depositada es, a saber:

ÚNICO: Informe de fecha 4 de Enero del año 2002, de la compañía D C M INGENIERÍA, S. A., sobre reporte técnico hecho a requerimiento de la compañía Consultores de la Cuenca del Caribe, S. A., en base a la Sentencia Civil No. 336, de fecha 6 de Septiembre del año 2001, dictada por la Cámara Civil y Comercial de la Corte de Apelación de Santo Domingo (sic);

*PDC* 20



**República Dominicana**
# Poder Judicial

VISTOS: los documentos depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte demandante, en fecha 21 de agosto de 2003, a cuyo tenor, las piezas depositadas son, a saber:

1. Original de la Resolución No. 1233-2003, de fecha Diez y Siete (17) del mes de Junio del año Dos Mil Tres (2003), donde Declara Inadmisible la solicitud de suspensión de la Ejecución de la Sentencia dictada por la Cámara Civil y Comercial de la Corte de Apelación de Santo Domingo, el 6 de Septiembre del 2001, por tratarse de una suspensión sobre suspensión, expedida por la Suprema Corte de Justicia de esta ciudad de Santo Domingo, debidamente Certificada en fecha Cinco (5) del mes de Agosto del año Dos Mil Tres (2003);

2. Original de la Resolución No. 1234-2003, de fecha Diez y Siete (17) del mes de Junio del año Dos Mil Tres (2003), donde Declara Inadmisible la solicitud de suspensión de la Ejecución de la Sentencia dictada por la Cámara Civil y Comercial de la Corte de Apelación de Santo Domingo, el 6 de Septiembre del 2001, por tratarse de una suspensión sobre suspensión, expedida por la Suprema Corte de Justicia de esta ciudad de Santo Domingo, debidamente Certificada en fecha Cinco (5) del mes de Agosto del año Dos Mil Tres (2003) (sic);

*PDC* 21



**República Dominicana**
# Poder Judicial

VISTOS: los documentos depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte co-demandada, EL PASO CGP COMPANY (antes THE COASTAL CORPORATION) en fecha 6 de enero de 2004, a cuyo tenor, las piezas depositadas son, a saber:

1.  Copia del Laudo Arbitral No. 10681/KGA de fecha trece (13) de agosto del 2001 adoptado por el Tribunal Arbitral Internacional de la Cámara de Comercio Internacional con sede en París, Francia debidamente certificado por el Director Legal de dicho tribunal, señor Emmanuel Jolivet, y autenticado debidamente por el Consulado Dominicano en París, por medio del cual se rechaza, entre otras, la demanda en daños y perjuicios intentada por CONSULTORES DE LA CUENCA DEL CARIBE, C. POR A., contra EL PASO CGP COMPANY;

2.  Traducción oficial del Laudo Arbitral referido en el numeral 1 del presente inventario, a cargo de la Intérprete Judicial del Juzgado de Primera Instancia del Distrito Nacional, Lic. Clara de la Cruz Veras;

3.  Copia de la Instancia en Solicitud de Otorgamiento de Exequátur a la Sentencia Arbitral Extranjera referida en el ordinal 1 del presente inventario, depositada por EL PASO CGP

*PDC* 22



República Dominicana
# Poder Judicial

COMPANY en fecha diecinueve (19) de julio del año 2002 por ante el Juez Presidente de la Cámara Civil y Comercial del Juzgado de Primera Instancia del Distrito Nacional;

4.  Copia de la Certificación expedida en fecha doce (12) del mes de noviembre por la Secretaría de la Cámara Civil y Comercial de la Segunda Sala del Juzgado de Primera Instancia del Distrito Nacional por la cual certifica la existencia de una demanda en otorgamiento de exequátur sobre el laudo arbitral referido en el numeral 1 del presente inventario;

5.  Copia del sentencia civil número 200-0350-2509, dictada por el Juez Presidente de la Cámara Civil y Comercial de la Segunda Sala del Juzgado de Primera Instancia del Distrito Nacional, por el cual ordena que el procedimiento de exequátur referido en el presente inventario sea llevado por la vía contradictoria;

6.  Copia del Acto número 98/2003 del ministerial René del Rosario Alcántara, de Estrados de la Cámara Civil y Comercial de la Segunda Sala del Juzgado de Primera Instancia del Distrito Nacional por el cual EL PASO CGP COMPANY demanda por la vía contenciosa a CONSULTORES DE LA CUENCA DEL CARIBE, C. POR A., y NICOR INTERNATIONAL CORPORATION, para el conocimiento

*PDC* 23



**República Dominicana**

# Poder Judicial

de la demanda en exequátur referida en el presente inventario (sic);

VISTO: el documento depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte demandante, en fecha 1 de abril de 2004, a cuyo tenor, la pieza depositada es, a saber:

ÚNICO: Acto No. 5947/2004, de fecha 25 del mes de Marzo del año 2004, instrumentado por el Ministerial JUAN MARCIAL DAVID MATEO, Alguacil Ordinario de la Tercera Sala del Juzgado de Primera Instancia del Distrito Nacional, contentivo de la Notificación de la Instancia de Oposición a reapertura de Debates formulada por al Compañía DE ELECTRICIDAD DE PUERTO PLATA, S. A. (CEPP), debidamente registrado (sic);

VISTOS: los documentos depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte co-demandada, en fecha 6 de abril de 2004, a cuyo tenor, la pieza depositada es, a saber:

1.      Original del acto número 440, debidamente registrado, de fecha 25 de marzo del 2004, instrumentado por el ministerial Pedro J. Chevalier, Alguacil de Estrados de la Primera Sala de la Cámara Civil y Comercial del Juzgado de Primera Instancia del Distrito Nacional,

*PDC* 24



**República Dominicana**
# Poder Judicial

mediante el cual se le notifica a Consultores de la cuenca del Caribe, C. por A. (Cari-Consult) la solicitud de reapertura de los debates;

2. Original del instancia de solicitud de reapertura de los debates, de fecha 24 del mes de marzo del 2004 (sic);

VISTO: el documento depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte demandante, en fecha 26 de abril de 2004, a cuyo tenor, la pieza depositada es, a saber:

ÚNICO: Acto No. 728/2004, de fecha 16 del mes de Abril del año 2004, instrumentado por el Ministerial JUAN MARCIAL DAVID MATEO, Alguacil Ordinario de la Tercera Sala del Juzgado de Primera Instancia del Distrito Nacional, contentivo de la Notificación de la Instancia en Oposición a Reapertura de Debates, notificado por la compañía CONSULTORES DE LA CUENCA DEL CARIBE, C. POR A. (CARIBCONSULT), debidamente registrado (sic);

VISTO: el documento depositado bajo inventario en la Secretaría de esta Corte por los abogados de la parte demandante, en fecha 1 de julio de 2004, a cuyo tenor, la pieza depositada es, a saber:

*PDC* 25



**República Dominicana**

# Poder Judicial

ÚNICO: Resolución No. 746-2004, de fecha 19 de Mayo del año Dos Mil Cuatro (2004), dictada por el Pleno de la Suprema Corte de Justicia, en relación a la señalada instancia de recusación (sic);

VISTOS: los demás documentos que reposan en el expediente;

### LA CORTE, DESPUÉS DE HABER DELIBERADO:

CONSIDERANDO: que con motivo del recurso de impugnación o contredit interpuesto por la sociedad de comercio compañía Consultores de la Cuenca del Caribe, S.A., contra la sentencia rendida en fecha 4 de octubre de 1996, por la Cámara Civil y Comercial de la Primera Circunscripción del Juzgado de Primera Instancia del Distrito Nacional, a favor de la razón social The Coastal Corporation, Coastal Power Production Company y la compañía de Electricidad de Puerto Plata, S.A., esta Corte dictó en fecha 6 de septiembre de 2001 su sentencia 336 (expediente No. 141), cuyo dispositivo, copiado a la letra, reza del modo siguiente:

> "PRIMERO: DECLARA regular y válida en cuanto a la forma y justa en cuanto al fondo la demanda en reparación de daños y perjuicios incoada por la compañía CONSULTORES DE LA CUENCA DEL CARIBE, S. A. (CARIB CONSULT), contra THE COASTAL

*PDC* 26



**República Dominicana**
# Poder Judicial

*CORPORATION, THE COASTAL POWER PRODUCTION COMPANY y la COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A., por haber sido hecha de conformidad con la ley; SEGUNDO: DECLARA irrecibible o inadmisible la demanda en intervención voluntaria hecha por la COMMONWEALTH DEVELOPMENT CORPORATION, por los motivos dados anteriormente; TERCERO: DECLARA regular y válida, en cuanto a la forma, pero la rechaza en cuanto al fondo, por las razones indicadas más arriba, la demanda en intervención forzosa incoada por la COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A. (CEPP), contra la CORPORACIÓN DOMINICANA DE ELECTRICIDAD (C. D. E.);*

*CUARTO: CONDENA a THE COASTAL CORPORATION y/o COASTAL POWER PRODUCTION COMPANY y la COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA, S. A. (CEPP), a pagar a CONSULTORES DE LA CUENCA DEL CARIBE, S. A. (CARIB CONSULT), una indemnización cuyo monto deberá ser liquidado por estado, de conformidad con los artículos 523 al 525 del Código de Procedimiento Civil, en moneda nacional, por concepto de los daños y perjuicios originados con la violación y desconocimiento del*

*PDC 27*



**República Dominicana**
# Poder Judicial

*contrato de servicios profesionales de
fecha 22 de enero de 1993, descrito más
arriba, en otra parte de este fallo;
QUINTO: CONDENA a THE COASTAL CORPORATION
y/o COASTAL POWER PRODUCTION COMPANY y la
COMPAÑÍA DE ELECTRICIDAD DE PUERTO PLATA,
S. A. (CEPP), al pago de los intereses
legales a partir de la demanda en
justicia, de la suma que resultare de la
liquidación por estado de los daños y
perjuicios, tal y como se ha dispuesto en
el ordinal anterior; SEXTO: CONDENA a
THE COASTAL CORPORATION y/o COASTAL POWER
PRODUCTION COMPANY y la COMPAÑÍA DE
ELECTRICIDAD DE PUERTO PLATA, S. A.
(CEPP), al pago de las costas del
procedimiento en favor de los DRES. JUAN
FERRAND BARBA, LUIS A. MEDINA SÁNCHEZ,
FERNANDO RAMÍREZ SAINZ y REINALDO FERMÍN,
abogados, quienes han afirmado haberlas
avanzado en su totalidad";*

CONSIDERANDO: que en virtud del fallo cuyo dispositivo se ha
trascrito precedentemente esta Corte está apoderada única y
exclusivamente de la liquidación de los daños y perjuicios
que la preindicada decisión condenó a pagar a las empresas
The Coastal Corporation y Coastal Power Production Company y
la Compañía de Electricidad de Puerto Plata, S.A., (CEPP), a

*PDC* 28



**República Dominicana**
# Poder Judicial

favor de la firma Consultores de la Cuenca del Caribe, S.A., (Carib Consult);

CONSIDERANDO: que en cuanto a la declinatoria por causa de sospecha legítima contra el pleno de la Cámara Civil de la Corte de Apelación del Distrito Nacional, obra en el expediente copia de la resolución No. 746-2004 de fecha 19 de mayo de 2004, emanada de la Suprema Corte de Justicia, cuyo dispositivo es del tenor siguiente: "Primero: Declara inadmisible la solicitud de declinatoria por causa de sospecha legítima, contenida en la instancia de referencia; Segundo: Ordena que la presente resolución sea comunicada al Magistrado Procurador General de la República, para los fines correspondientes (sic)"; en consecuencia resulta innecesario estatuir sobre dicha solicitud valiendo sentencia esta solución sin necesidad de hacerla constar en la parte dispositiva de este fallo;

CONSIDERANDO: que además, en el expediente se encuentra depositada copia de la resolución No. 1234-2003, de fecha 17 de junio de 2003, dada por la Suprema Corte de Justicia cuyo dispositivo copiado literalmente dice así: "Declara inadmisible la solicitud de suspensión de la ejecución de la sentencia dictada por la Cámara Civil y Comercial de la Corte de Apelación de Santo Domingo, el 6 de septiembre del 2001, por tratarse de una suspensión sobre suspensión (sic)";

*PDC* 29



**República Dominicana**
# Poder Judicial

CONSIDERANDO: que la compañía de Electricidad de Puerto Plata, S.A., puesta en mora de presentar conclusiones sobre el fondo, según resulta del acta de la última audiencia, mediante instancia depositada en la Secretaría de esta Corte en fecha 1 de abril del 2004, ha solicitado la reapertura de debates, y, en igual sentido ha formulado pedimento El Paso C G P Company (antes The Coastal Corporation), mediante instancia depositada en fecha 6 de abril de 2004, con la oposición hecha a esta medida de la sociedad Consultores de la Cuenca del Caribe, S.A.;

CONSIDERANDO: que si bien es cierto que es una facultad reconocida por la doctrina jurisprudencial a los jueces ordenar, ya de oficio o bien a petición de parte, la reapertura de los debates cuando estos se han cerrado y si se han producido hechos y aparecen documentos nuevos que por alguna razón no pudieron hacerse valer oportunamente, siempre y cuando los mismos tengan una importancia tal que hagan o puedan influir en el sino del proceso, no menos verdadero es que, cuando, como en la especie, la instancia en solicitud de reapertura de debates, lo que persigue es aniquilar una decisión contra una parte que, puesta en mora de concluir se niega a ello, no procede tal medida; que por demás, dichas solicitudes no se hicieron acompañar de documentos nuevos;

CONSIDERANDO: que esta Corte es de criterio de que, cuando, como sucede en la especie, habiéndose concedido a la parte

*PDC* 30



**República Dominicana**
# Poder Judicial

recurrida  y a los codemandados la oportunidad de concluir
sobre el fondo, luego de plantear una serie de incidentes que
fueron acumulados  por la Corte para fallarlos conjuntamente
con el fondo, sin que estas   hicieran uso de su legítimo
derecho, no se vulnera el derecho de defensa, toda vez que,
es de principio que nadie puede prevalerse de su propia
falta, de su negligencia u omisión imprudente;

CONSIDERANDO: que, en ningún momento esta Corte les ha
coartado el derecho a los recurridos de concluir sobre el
fondo, ni les ha impedido hacerlo; que al acumular los
incidentes para fallarlos con el fondo, sin renuncia a las
conclusiones incidentales, es, en el criterio de esta Corte
una regla que encuentra su fundamento en el principio
Constitucional de utilidad comunitaria consagrado en el
artículo 8.5 de la Constitución; entendiendo que es de mayor
beneficio a los intereses colectivos que los procesos no se
eternicen en los tribunales, antes bien que éstos tengan la
capacidad y posibilidad de rendir sus decisiones en tiempo
razonable;

CONSIDERANDO: que procede pues, rechazar, como al efecto se
rechaza, la reapertura de los debates, valiendo sentencia
esta decisión sin que sea menester hacerla figurar en la
parte dispositiva de este fallo;

CONSIDERANDO: que la compañía  El Paso CGP (antes The Coastal

*PDC* 31



**República Dominicana**
# Poder Judicial

Corporation) solicitó en conclusiones formales a esta Corte declarar interrumpida la instancia a consecuencia de que uno de sus abogados, el Dr. Ramón Tapia Espinal, falleció en el curso del procedimiento, por lo que - conforme con dicha sociedad - es obligación de Carib Consult demandar a El Paso CGP Company en renovación de instancia;

CONSIDERANDO: que si bien es cierto que como se desprende del artículo 344 del Código de Procedimiento Civil, la muerte, dimisión, interdicción o destitución del abogado de una de las partes, y con el propósito de garantizar a la parte por dicho letrado representada, su legítimo derecho de defensa, conlleva necesariamente la interrupción de la instancia hasta tanto se verifique la sustitución de dicho letrado, no es menos cierto que esto sólo procede cuando la representación de la parte de que se trate la ha asumido tan sólo un abogado, no siendo aplicable el precitado texto legal cuando, como en el caso que nos ocupa, la representación y asistencia técnico - legal de la parte que ha propuesto la interrupción ha sido confiada a más de un abogado; que dada esa pluralidad de representación, es obvio que el fallecimiento del Dr. Tapia Espinal no hace aplicable, reiteramos, el artículo 344 del Código de Procedimiento Civil; por lo que estimamos procedente rechazar, como al efecto rechazamos, el pedimento examinado, valiendo sentencia esta solución sin necesidad de hacerla figurar en el dispositivo de esta decisión;

*PDC* 32



**República Dominicana**
# Poder Judicial

CONSIDERANDO: que la parte recurrida ha peticionado, además, el sobreseimiento definitivo de la presente instancia hasta tanto sea fallada una demanda incoada por The Coastal Corporation contra Carib Consult y la compañía Niccer International Corporation, de la cual fue apoderada la Cámara de Comercio Internacional, la cual apoderó a un árbitro, quien, en fecha 13 de agosto de 2001, emitió un laudo, producto de la cláusula compromisoria inserta en el contrato de servicios profesionales suscrito originalmente entre The Coastal Corporation y Niccer International Corporation en fecha 22 de enero de 1993;

CONSIDERANDO: que, al respecto, vale recordar que las sentencias de los tribunales dominicanos, son emanaciones de la soberanía nacional, y, cuando adquieren autoridad de cosa juzgada, de modo definitivo, como sucede con la sentencia No. 409 del 27 de noviembre de 1997, rendida por esta Corte, y que reconoció la competencia de los tribunales dominicanos para conocer de la litis en cuestión, es decir, la demanda en reparación de daños y perjuicios, esta decisión prevalece o se impone a la decisión arbitral; por lo que procede rechazar dicho pedimento, valiendo sentencia esta solución sin que sea necesario hacerla figurar en el dispositivo de esta sentencia;

*PDC* 33



**República Dominicana**
# Poder Judicial

CONSIDERANDO: que, si bien el informe preparado por la compañía D C M Ingeniería, S.A., a requerimiento de la entidad Consultores de la Cuenca del Caribe, S.A, (Carib Consult) fechado el 4 de diciembre de 2001 resume en sus conclusiones lo siguiente: " por medio de este trabajo hemos querido establecer un marco de referencia que permita determinar las indemnizaciones reales por honorarios *no* recibidos por CARIB CONSULT en su participación para la realización de los negocios de COASTAL CORPORATION en la República Dominicana. El trabajo de CARIB CONSULT fue vital e importante en la introducción de COASTAL CORPORATION en la República Dominicana. Este requirió de una inversión de tiempo, factor empresarial y esfuerzo, por lo que debe ser remunerado con los honorarios dejados de percibir, usando como base una indemnización justa y proporcional al volumen de operaciones realizadas por COASTAL CORPORATION, la misma cuenta con un capital de inversión en R.D. cercano a los 400 millones de dólares. Finalmente de conformidad con la Sentencia Civil No. 336 de la Cámara Civil y Comercial de Corte de Apelación de Santo Domingo, se ha realizado una evaluación profesional de la cantidad estimada por los daños y perjuicios al demandante, esta suma asciende US$ 57,294,026 (CINCUENTA Y SIETE MILLONES DOSCIENTOS NOVENTA Y CUATRO MIL VEINTISÉIS DOLARES) equivalentes a RD$ 954,518,474 (NOVECIENTOS CINCUENTA Y CUATRO MILLONES QUINIENTOS DIECIOCHO MIL CUATROCIENTOS SETENTA Y CUATRO PESOS), considerando los intereses y la deuda de honorarios acumulada a través de los años de operación de COASTAL CORPORATION y sus múltiples

*PDC* 34



**República Dominicana**
# Poder Judicial

SUBSIDIARIAS establecidas en el país (sic)"; y que la suma que consigna es muy superior a la reclamada originalmente por la demandante, esa sola circunstancia no es óbice para inferir que con ella se pretenda romper la inmutabilidad del proceso, toda vez que los jueces son soberanos para apreciar los daños y no están atados a las opiniones de los peritos pero sí a las conclusiones y pretensiones de las partes;

CONSIDERANDO: que, contrario a lo que plantean los demandados la demandante original no pretende con dicho reporte el pago de la suma a que en el mismo se expresa, sino poner a esta Corte en condición de fijar, a partir del mismo, el monto de la indemnización a ser acordada;

CONSIDERANDO: que en contradicción con lo sostenido por la parte intimada, no se trata de una prueba emanada de la propia recurrente, sino de un peritaje realizado por un tercero, cuyo contenido, si se considera falaz o interesado o errado puede ser combatido por todos los medios de prueba, lo que no se ha verificado en la especie, limitándose la parte intimada a indicar que dicho documento "es un peritaje mentiroso" sin aportar los elementos de prueba que avalen dichas aseveraciones;

CONSIDERANDO: que nada impide, como lo entienden los recurridos, que la parte a cuyo cargo se haya puesto la obligación de liquidar por estado los daños y perjuicios por

*PDC* 35



**República Dominicana**
# Poder Judicial

ella experimentados, pueda valerse, para hacer dicha prueba de cualquier medio probatorio, conservando siempre la parte adversa la posibilidad de impugnar y contradecir las evaluaciones;

CONSIDERANDO: que en consecuencia procede rechazar la solicitud de nulidad del reporte hecho por la firma D C M Ingeniería, S.A., en fecha 4 de diciembre de 2001 y mediante el cual se liquidan los daños y perjuicios experimentados por la Compañía Consultores de la Cuenca del Caribe, S.A., (Carib Consult); valiendo sentencia esta decisión sin necesidad de hacerla figurar en la parte dispositiva de este fallo;

CONSIDERANDO: que esta Corte es de criterio que debe proceder a liquidar en la suma de diez millones de dólares norteamericanos (US$ 10,000.000.00), o su equivalente en pesos dominicanos, las indemnizaciones que las compañías demandadas deben pagarle a la razón social demandante por concepto de la reparación de los daños y perjuicios por ella experimentados a consecuencia de las faltas retenidas;

CONSIDERANDO: que esta indemnización se fundamenta en las pérdidas experimentadas por la demandante al verse privada de las compensaciones a que tenía derecho en su calidad de agente intermediario tanto en el renglón de generación de electricidad como en la venta de gas licuado de petróleo, tomando en consideración para ello, el comportamiento de la

*PDC* 36



**República Dominicana**

# Poder Judicial

firma y las actividades económicas mercantiles realizadas y
ejecutadas por la firma demandada;


CONSIDERANDO: que es de ley que todo el que sucumbe en
justicia, será condenado al pago de las costas del
procedimiento;

POR LOS MOTIVOS EXPUESTOS Y en mérito a lo que disponen los
artículos 78, 130, 133, 141, 146, 344 y 525 y siguientes del
Código de Procedimiento Civil; 1315 del Código Civil; y 8.5
de la Constitución de la República;


LA CÁMARA CIVIL DE LA CORTE DE APELACIÓN DEL DISTRITO
NACIONAL, administrando justicia, EN NOMBRE DE LA REPÚBLICA,
por autoridad de la ley y en mérito de los artículos citados;


F      A      L      L      A:


PRIMERO: acoge cuanto al fondo y en consecuencia, LIQUIDA en
la suma de DIEZ MILLONES DE DÓLARES
(US$10,000,000.00), o su equivalente en pesos dominicanos,
las indemnizaciones que las compañías THE COASTAL
CORPORATION, COASTAL POWER PRODUCTION COMPANY y la COMPAÑÍA
DE ELECTRICIDAD DE PUERTO PLATA (CEPP), deberán pagarle a la
demandante CONSULTORES DE LA CUENCA DEL CARIBE, S.A., (CARIB-
CONSULT);



**República Dominicana**

# Poder Judicial

SEGUNDO: condena a las partes demandadas al pago de las costas del proceso y ordena su distracción a favor y provecho de los abogados de la parte demandante, doctores JUAN ANTONIO FERRAND, LUIS MEDINA SÁNCHEZ y los licenciados FERNANDO RAMÍREZ SAINZ Y FRANK REYNALDO FERMIN, abogados, quienes afirman haberlas avanzado en su totalidad;

Y por esta sentencia así, se pronuncia, ordena, manda y firma;

(FIDOS) MANUEL ALEXIS READ ORTIZ, MARCOS ANTONIO ACOSTA GARCIA, HERMÓGENES ACOSTA DE LOS SANTOS, XIOMARAH ALTAGRACIA SILVA SANTOS y LUCAS A. GUZMÁN L., Secretario. DADA Y FIRMADA ha sido la anterior sentencia por los magistrados que figuran en el encabezamiento, el mismo día, mes y año expresados por ante mi, Secretario que Certifica, LUCAS A. GUZMÁN L., Secretario.

CERTIFICA: Que la presente copia es fiel y conforme a su original, la que expido, firmo y sello a solicitud de la parte interesada, en la ciudad de Santo Domingo, Distrito Nacional, capital de la República Dominicana, hoy día 29 del mes de septiembre del año 2004.

LUCAS A. GUZMÁN L.
Secretario

LIQUIDACIÓN FISCAL:

POR BÚSQUEDA.............RD$0.50
POR CERTIFICACIÓN........RD$1.00
POR FOJAS (38)...........RD$7.60
TOTAL................. RD$9.10

*PDC* 38

# EXHIBIT "4"



**BanReservas**

25 de octubre del 2004

Señores
Compañía de Electricidad de Puerto Plata, S.A.
Ciudad

Atn.:  Sr. Marcos Cochón
        **Gerente General**

Distinguidos Señores:

En repuesta a su solicitud de fecha 22 de octubre del año en curso, les informamos que su cuenta corriente No.240-007557-8 se encuentra afectada por motivo del embargo retentivo trabado en su perjuicio a requerimiento de Consultores Cuenca del Caribe, S.A., mediante Acto No. 456/2004 de fecha 21 de octubre del 2004.  Dicho embrago inmovilizó fondos por RD$5,087,976.12.

Sin más por el momento, nos reiteramos a sus órdenes.

Atentamente,

Naimly Fernández
**Ejecutiva de Negocios**
**Banca Corporativa**

Miguelina Medina
**Gerente**
**Banca Corporativa**

Recepción
CEPP Compañía de
Electricidad de
Puerto Plata, S.A.

por Milucia R

# EXHIBIT "5"

Acta No. 491/2004

En la Ciudad de Santo Domingo, Distrito Nacional, República Dominicana, a los _____ _____ _____ _____ días del mes de Noviembre del año Dos Mil Cuatro (2004).

A requerimiento de la sociedad de comercio por acciones **Consultores de la Cuenca del Caribe, S. A. (CARIB. CONSULT.),** constituida y existente de conformidad con las leyes de la República Dominicana, con domicilio social en el número 169, Avenida Pedro Henríquez Ureña, de esta ciudad, válidamente representada por su **Presidente, ingeniero Rafael Martínez Céspedes,** dominicano, mayor de edad, cédula de identidad y electoral número 001-0088294-3, con domicilio y residencia en esta ciudad, quien tiene como abogados constituidos y apoderados especiales a los doctores **M. A. Báez Brito, Juan A. Ferrand y Luis Medina Sánchez** y a los licenciados **Fernando Ramírez Sainz y Frank Reynaldo Fermín,** dominicanos, mayores de edad, cédulas de identidad y electoral números 001-0785826-8, 001-0163531-6, 001-0135934-7, 001-0101934-7 y 001-0727996-0, con estudio común en el apartamento 2-D, segunda planta, edificio número 5, Avenida Winston Churchill, Bella Vista, de esta ciudad, su domicilio de elección a los fines del presente acto.

Yo, **Carlos Figuereo Yebilia,** infrascrito, Alguacil Ordinario de la Cuarta Sala - Cámara Penal del Juzgado de Primera Instancia del Distrito Nacional, cédula de identidad y electoral número 001-0132503-3, con domicilio y residencia en el apartamento 1-A, edificado en el número 4, Calle Maranata, Los Caobas, Municipio de Santo Domingo Oeste, Provincia de Santo Domingo.

Expresamente, me he trasladado y de manera sucesiva, **Primero:** Al número 45, Avenida México, de esta ciudad, domicilio de la **Tesorería Nacional de la República Dominicana** y una vez allí hablando con _____ _____ quien me declaró y dijo ser _____ _____. a quien requerí visar el original del presente acto: **Segundo:** Al **Despacho del Magistrado Procurador General de la República,** sito en uno de los locales de la tercera planta del Palacio de Justicia, edificado en la intersección formada por las calles licenciado Hipólito Herrera Billini y Juan B. Pérez, Centro de Los Héroes, de esta ciudad y una vez allí hablando con _____ _____ quien me declaró y dijo ser _____ _____, a quien requerí visar el original del presente

11-11-04;17:43   ;                                                          5358215                    # 3/ 2

... 2 ...

acto; **Tercero**: Al número 3, Avenida John F. Kennedy, de esta ciudad, domicilio del **Banco Dominicano del Progreso, S. A.** y una vez allí hablando con _____

_____ quien me declaró y dijo

ser _____, a quien requerí visar el

original del presente acto; **Cuarto**: Al número 20, Avenida John F. Kennedy, de esta ciudad, domicilio del **Banco Popular Dominicano, S. A.** y una vez allí hablando con

_____ quien me

declaró y dijo ser _____, a quien

requerí visar el original del presente acto; **Quinto**: A la intersección formada por la Avenida Winston Churchill y la Calle Porfirio Herrera, de esta ciudad, domicilio del **Banco de Reservas de la República Dominicana** y una vez allí hablando con _____

_____ quien me declaró y

dijo ser _____, a quien requerí visar

el original del presente acto; **Sexto**: A la intersección formada por las calles Leopoldo Navarro y Federico Henríquez y Carvajal, de esta ciudad, domicilio del **Banco Central de la República Dominicana** y una vez allí hablando con _____

_____, a quien requerí visar el original

del presente acto; **Séptimo**: Al número 1108, Avenida Rómulo Betancourt, La Julia, de esta ciudad, domicilio del la sociedad **Empresa Generadora de Electricidad Itabo, S. A.** y una vez allí hablando con _Vicente Pimentel_

_____ quien me declaró y dijo ser _(firma)_

_____, a quien requerí visar el original del presente acto; **Octavo**: Al número 53, Calle Paseo de Los Locutores, Ensanche Evaristo Morales, de esta ciudad, domicilio de la sociedad **Coastal Petroleum Dominicana, S. A.** y una vez allí hablado con

_____ quien me

declaró y dijo ser _____, a quien

requerí visar el original del presente acto; **Noveno**: Al número 77, Avenida Winston Churchill, de esta ciudad, domicilio de la **Compañía de Electricidad de Puerto Plata, S. A.**, y una vez allí hablando con _____

_____ quien me declaró y dijo ser _____

_____, o quien requerí visar el original del presente acto; **Décima**: Al Despacho del Magistrado Procurador Fiscal del Distrito Nacional, sito en uno de los locales de la primera planta del Palacio de Justicia, edificado en la intersección for-

... 3 ...

mada por las calles Fabio Fiallo y Beller, Ciudad Nueva, de esta ciudad y una vez allí ha-
blando con _____

_____ quien me declaró y dijo ser _____

_____, a quien requerí visar el original del presente acto.

Y yo Alguacil requerido, actuando en los lugares de mis traslados, les he notificado suce-
sivamente a: ESTADO DOMINICANO, en manos de la Tesorería Nacional de la República
y el Magistrado Procurador General de la República; Banco Dominicano del Progreso, S.
A.; Banco Popular Dominicano, S. A.; Banco de Reservas de la República Dominicana;
Banco Central de la República Dominicana; Empresa Generadora de Electricidad Itabo,
S. A.; Coastal Petroleum Dominicana, S. A.; Compañía de Electricidad de Puerto Plata, S.
A. y a las sociedades El Paso CGP Company (antes The Coastal Corporation), El Paso Po-
wer Company (antes The Coastal Power Production Company) y El Paso Energy, en ma-
nos del Magistrado Procurador Fiscal del Distrito Nacional, conforme las disposiciones del
Ordinal 8° del Artículo 69 del Código de Procedimiento Civil, dada la circunstancia de
tener su domicilio social en 9 Greenway Plaza, Ciudad de Houston, Estado de Texas,
77046-0995, Estados Unidos de América y 1001 Louisiana Street, Ciudad de Houston, Esta-
do de Texas, 77002, Estados Unidos de América, respectivamente, que la requeriente,
sociedad Consultores de la Cuenca del Caribe, S. A. (CARIB. CONSULT.), les cita a com-
parecer y concluir, por ministerio de abogada, a la audiencia que tendrá lugar el día
Noviembre Quince (15) año 2004, a los nueve horas de la mañana (9:00 A. M.), por ante
el Magistrado Presidente de la Cámara Civil y Comercial del Juzgado de Primera Instan-
cia del Distrito Nacional, en atribuciones de referimiento, sito en el local de la Sala de
Audiencias de la Tercera Sala - Cámara Civil y Comercial del Juzgado de Primera Ins-
tancia del Distrito Nacional, ubicada en la segunda planta del Palacio de Justicia, edifi-
cado en la intersección formada por las calles licenciado Hipólito Herrera Billini y Juan B.
Pérez, Centro de Los Héroes, de esta ciudad, a los fines y motivos siguientes: Atendido, a
que al tenor de los actos números 456-2004, 465-2004 y 468-2004, instrumentados en fe-
chas Octubre 21, 27 y 28 2004, respectivamente, por el ministerial Carlos Figuereo Yebi-
lia, Alguacil Ordinario - Cuarta Sala Cámara Penal del Juzgado de Primera Instancia del
Distrito Nacional, la requeriente, sociedad Consultores de la Cuenca del Caribe, S. A.
(CARIB. CONSULT), hizo practicar embargo retentivo u oposición en perjuicio de las so-
ciedades Compañía de Electricidad de Puerto Plata, S. A., El Paso CGP Company (antes
The Coastal Corporation), El Paso Power Company (antes The Coastal Power Production

... 4 ...

Company) y El Paso Energy, hasta el duplo de la cantidad Veinte Millones Novecientos
Mil Dólares Estadounidenses (US$20,900,000.00), en virtud de **I.- Sentencia Civil No. 336,
Expediente No. 141,** rendida por la **Cámara Civil y Comercial de la Corte de Apelación
de Santo Domingo,** en fecha **Septiembre 6 2001** y **II.- Sentencia Civil No. 420,** rendida por
la **Cámara Civil y Comercial de la Corte de Apelación del Distrito Nacional,** en fecha
**Septiembre 29 2004,** siendo debidamente notificados a los terceros embargados los tí-
tulos que servían de base a ese embargo retentivo y oposición; Atendido, a que confor-
me publicación aparecida en la **Página No. 4** del periódico **Diario Libre,** en su edición
correspondiente al día **Noviembre 11 2004,** se publica la información siguiente: **"El Go-
bierno pagará este mes US$17 MM al sector eléctrico. S.D. El Secretario de Finanzas, Vi-
cente Bengoa, anunció que el Gobierno hará este mes un desembolso por US$17 millo-
nes a las empresas del sector eléctrico y que en diciembre aportará otros US$25 millo-
nes para reducir los apagones. Bengoa habló previo a su salida a Costa Rica junto al
Gobernador del Banco Central, Héctor Valdez Albizu, para participar en la Primera Reu-
nión de Autoridades Económicas de Centroamérica. Del 17 de agosto hasta diciembre
el Gobierno aportará US$130 millones al sector eléctrico.";** Atendido, a que es regla de
principio la que dispone que cuando se está en presencia de un embargo retentivo u
oposición, el tercero embargado no puede desapoderarse de los valores o dineros
afectados por ese embargo, títulos de crédito u objetos mobiliarios adeudados a la par-
te embargada, en la especie Compañía Eléctrica de Puerto Plata, S. A., Compañía de
Electricidad de Puerto Plata, S. A., El Paso CGP Company (antes The Coastal Corpora-
tion), El Paso Power Company (antes The Coastal Power Production Company) y El Paso
Energy, las cuales fueron demandadas previa denuncia del embargo en validez del mis-
mo; Atendido, a que conforme las disposiciones del Artículo 569 del Código de Procedi-
miento Civil, modificado por la Ley No. 138 de fecha Mayo 21 1971, se dispone: **"Art.
569.- Los funcionarios públicos, bancos e instituciones de crédito mencionados en el ar-
tículo 561 no serán citados en declaración afirmativa; pero estarán obligados a expedir
una constancia al se debiere, a la parte embargada, con indicación de la suma debida,
si fuere líquida, cuando tal constancia le sea requerida por el embargante, siempre que
exista título auténtico o sentencia que declaren la validez del embargo.";** Atendido, a
que en atención al contenido de ese texto y al tenor del contenido del acto número
465-2004, instrumentado en fecha Octubre 27 2004, por el ministerial Carlos Figuereo Ye-
pez, de generales consignadas, la requeriente, sociedad Consultores de la Cuenca del
Caribe, S. A. (CARIB. CONSULT), puso en mora a los terceros embargados de librarles la

... 5 ...

certificación a que se refiere el Artículo 569 del Código de Procedimiento Civil, modificado por la **Ley No. 138** de fecha **Mayo 21 1971**; Atendido, a que siendo asunto público y notorio que el **ESTADO DOMINICANO** es deudor de las empresas generadoras de electricidad, proveedoras de servicios mediante la venta de energía eléctrica, como por igual que las instituciones de intermediación financieras se han resistido a librar la certificación a que se refiere la **Ley No. 138** de fecha **Mayo 21 1971**, sin causa alguna, se impone obtener por la vía del Juez de Referimiento, la fijación de una astreinte, toda vez que se trata de la ejecución de una obligación de hacer, susceptible de ser ejecutada en naturaleza por aquel a cuyo cargo se pone la misma, tal como ocurre con el **ESTADO DOMINICANO** y el resto de los terceros embargados, pretendiendo ignorar que el embargo retentivo u oposición de las fechas precedentes fue practicado en virtud de títulos ejecutorios auténticos sobre cantidades ciertas y líquidas, tomando en consideración el contenido de: **I.- Sentencia Civil No. 336, Expediente No. 141,** rendida por la **Cámara Civil y Comercial de la Corte de Apelación de Santo Domingo,** en fecha **Septiembre 6 2001** y **II.- Sentencia Civil No. 420,** rendida por la **Cámara Civil y Comercial de la Corte de Apelación del Distrito Nacional,** en fecha **Septiembre 29 2004**; Atendido, a que si bien es cierto que no existe la definición de urgencia, se la concibe como una situación de hecho donde un retardo puede entrañar un perjuicio irreparable, lo que autoriza al beneficiario de lo dispuesto por la Ley, a obtener una decisión que le garantice el cumplimiento de la sentencia a intervenir, con motivo de la demanda en validez contenida en los actos precedentemente indicados, máxime cuando por Ley se dispone que los terceros embargados no serán demandados en declaración afirmativa; Atendido, a que conforme los Artículos 101, 107, 109 y 110 de la Ley No. 834 de fecha Julio 15 1978, se otorga competencia exclusiva al Presidente del Tribunal de Primera Instancia, para disponer en referimiento, aquellas medidas conservatorias fundadas en la urgencia, que tiendan a evitar una turbación manifiestamente ilícita, tal como ocurriría en la especie si los terceros embargados, desconociendo el mandato legal - Artículo **569 del Código de Procedimiento Civil** -, se desapoderan o entregan a las embargadas, **Compañía Eléctrica de Puerto Plata, S. A., Compañía de Electricidad de Puerto Plata, S. A., El Paso CGP Company** (antes The Coastal Corporation), **El Paso Power Company** (antes The Coastal Power Production Company) y **El Paso Energy**, los valores afectados por los embargos retentivos u oposiciones previamente consignados; Atendido, a que el Juez en referimiento no solamente tiene competencia para fijar las astreintes, sino por igual para realizar su liquidación inmediata; Atendido, a que toda parte que sucumbe en Justicia será con-

... 6 ...

denoda al pago de las costas; Por tales razones, oigan pedir: **ESTADO DOMINICANO:**
Banco Dominicano del Progreso, S. A.; Banco Popular Dominicano, S. A.; Banco de Re-
servas de la República Dominicana; Banco Central de la República Dominicana; Empre-
sa Generadora de Electricidad Itabo, S. A.; Coastal Petroleum Dominicana, S. A.; Com-
pañía de Electricidad de Puerto Plata, S. A.; El Paso CGP Company (antes The Coastal
Corporation); El Paso Power Company (antes The Coastal Power Production Company) y
El Paso Energy y el Magistrado Presidente por  sentencia a intervenir fallar: **Primero:** Dis-
poner como medida conservatoria, provisional y de urgencia de la competencia del
Magistrado Presidente del Tribunal de Primera Instancia en Referimientos, que los de-
mandados en la presente instancia, de acuerdo con las disposiciones del Artículo 569
del Código de Procedimiento Civil, modificado por la Ley No. 138 de fecha Mayo 21
1971, libren en un plazo no mayor de un (1) día franco, computado a partir de la notifi-
cación de la decisión a intervenir, la certificación dando constancia sobre su calidad
de deudores de Compañía de Electricidad de Puerto Plata, S. A.; El Paso CGP Company
(antes The Coastal Corporation); El Paso Power Company (antes The Coastal Power Pro-
duction Company) y El Paso Energy. proveniente de valores adeudados en el caso del
**ESTADO DOMINICANO** y de aquellas valores, títulos mobiliarios o de crédito en manos de
las instituciones de intermediación y sociedades sobre las cuales no solo recae la obliga-
ción del embargo, sino también el libramiento de la certificación exigida por Ley; **Se-
gundo:** En caso de un retardo o negativa a entregar la certificación cuya entrega se pi-
de ejecutar, fijar una astreinte no menor de Cien Mil Dólares Estadounidenses (US$100,
000.00) por cada día de retardo, solidariamente en todo caso a cargo de aquellos
codemandados que se negaren a dar ejecución a la decisión a intervenir; **Tercero:**
Condenar a los codemandados al pago de las costas. **BAJO RESERVAS DE DERECHOS Y
ACCIONES.**

Y yo Alguacil infrascrito, así lo he notificado y dado copia del presente acto a: ESTADO
DOMINICANO, en manos de la Tesorería Nacional de la República y el Magistrado Pro-
curador General de la República; Banco Dominicano del Progreso, S. A.; Banco Popular
Dominicano, S. A.; Banco de Reservas de la República Dominicana; Banco Central de la
República Dominicana; Empresa Generadora de Electricidad Itabo, S. A.; Coastal Petro-
...minicano, S. A.; Compañía de Electricidad de Puerto Plata, S. A. y a las socieda-
...  ...o CGP Company (antes The Coastal Corporation), El Paso Power Company
(antes The Coastal Power Production Company) y El Paso Energy, en manos del Magis-

... 7 ...

trado Procurador Fiscal del Distrito Nacional, conforme las disposiciones del Ordinal 8ª
del Artículo 69 del Código de Procedimiento Civil, todo en manos de las personas con
las cuales hablé en los lugares de mis traslados y no se pretenda luego alegar ignoran-
cia.

Costos: _____ ____

Visado Por:

_____
Tesorería Nacional de la República Dominicana

_____
Magistrado Procurador General de la República

_____
Banco Dominicano del Progreso, S. A.

_____
Banco Popular Dominicano, S. A.



_____
Banco de Reservas de la República Dominicana

_____
Banco Central de la República Dominicana

... 8 ...

Empresa Generadora de electricidad Itabo, S. A.

Coastal Petroleum Dominicana, S. A.

Compañía de Electricidad de Puerto Plata, S. A.

Magistrado Procurador Fiscal del Distrito Nacional

Doy Fe;

